FRED S. JAMES & COMPANY, Appellant, *v*. ROSSIA INSURANCE COMPANY OF AMERICA, Respondent.

Debtor and creditor — fraudulent conveyance — insurance — corporations — assignment by Russian insurance company to defendant of its assets and liabilities in this country — action by foreign creditor of Russian company to set aside assignment as in fraud of creditors not maintainable where transfer was to preserve assets from revolutionists — power of refugees from revolution to conserve property in this country — acts recognized as legitimate.

1. An action by an English corporation, as creditor of a Russian insurance company, which, since the year 1904, had conducted a department of its business in this country and which, under sections 27 and 28 of the Insurance Law (Cons. Laws, ch. 28) and of a similar statute of another State, had created within this country a capital corresponding to that of a domestic corporation, to set aside, as in fraud of creditors, an assignment, made April 1, 1919, by the Russian corporation to the defendant of practically all of its assets and all of its liabilities in this country, cannot be maintained where, upon a careful examination of the whole case, no element of fraud in the assignment can be detected, the good faith of all parties seems quite apparent and it clearly appears that the assignment was not made for the purpose of defeating the claims of foreign creditors of the Russian corporation but was based upon the idea of conserving its assets at a time when, though not insolvent, it was threatened with destruction from revolution in the place of its origin.

2. Nor is this changed by the facts that upon the record and on the basis of strict interpretation of law no authority is found for the resident trustee of the Russian company to act for it to the extent of assigning all its assets and liabilities to defendant and of holding as trustee for the old company shares of defendant's stock, which he thereafter transferred to a French holding company, organized by shareholders and members of the board of directors of the Russian company for the purpose of concentrating its assets outside of Russia, which stock has been since sold to many persons. Proscribed individuals, fleeing from the fury of the Russian revolution, retained the power to conserve property in this country, so far as the courts of this State can protect it, and their acts to preserve assets from con-

fiscation by revolutionists, whose authority our government rejects, are recognized by us as just, equitable and altogether legitimate acts of conservation.

*James & Co.* v. *Rossia Ins. Co.,* 220 App. Div. 404, affirmed.

(Argued January 11, 1928; decided February 14, 1928.)

` APPEAL from a judgment, entered May 24, 1927, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing an interlocutory judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and directing a dismissal of the complaint.

*David Rumsey* and *Louis J. Wolff* for appellant. The transfers of the Russian company's assets to the defendant and to the French corporation were not made with authority. (*Russian Reinsurance Co.* v. *Stoddard,* 240 N. Y. 149; 240 N. Y. 682; *Andre* v. *Beha,* 211 App. Div. 380; 240 N. Y. 605; *Severnoe Securities Corp.* v. *Westminster Bank,* 214 App. Div. 14; *Russian Commercial & Industrial Bank* v. *Comptoir D'Escompte Mulhouse,* 40 T. L. R. 837; A. C. 112; 132 L. T. R. 99; *Banque Internationale De Commerce De Petrograd* v. *Goukassow,* 40 T. L. R. 837; A. C. 150; 132 L. T. R. 116.)

*Nathan L. Miller, Hartwell Cabell* and *Harold Otis* for respondent. The refugee directors of the Russian company had authority to direct the sale of its United States branch to the defendant. (*Matter of People, Second Russian Ins. Co.,* 243 N. Y. 524; *Russian Reinsurance Co.* v. *Stoddard,* 240 N. Y. 149; *First Russian Ins. Co.* v. *Beha,* 240 N. Y. 602; *Hamilton Trust Co.* v. *Clems,* 17 App. Div. 152; 163 N. Y. 423; *City of Buffalo* v. *Balcom,* 134 N. Y. 532; *Holmes & Griggs Mfg. Co.* v. *Holmes & Wessell Metal Co.,* 127 N. Y. 252; *Jourdan* v. *L. I. R. R. Co.,* 115 N. Y. 380; *Woodruff* v. *Erie R. R. Co.,* 93 N. Y. 609; *Castle* v. *Lewis,* 78 N. Y. 131; *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62; *St. Louis R. R. Co.* v. *Terre Haute*

*R. R. Co.,* 145 U. S. 393; *Mahoning Mining Co.* v. *Anglo-Californian Bank,* 104 U. S. 192; *National Bank* v. *Matthews,* 98 U. S. 621; *International Trust Co.* v. *Davis & Farnum Mfg. Co.,* 70 N. H. 118.)

*James H. McIntosh* for Howard E. Jones, *amicus curiæ.* The complaint does not state a case for equitable relief, nor justify an equity court in taking jurisdiction and rendering a judgment against the defendant. (*Trotter* v. *Lisman,* 199 N. Y. 497; *Adee* v. *Bigler,* 81 N. Y. 349; *Spellman* v. *Friedman,* 130 N. Y. 421; *Ditmar* v. *Gould,* 60 App. Div. 94; *Kraemer* v. *Williams,* 131 App. Div. 236; *Wiggins* v. *Armstrong,* 2 Johns. Ch. 144.) The transfer was not fraudulent. It not merely protected the American creditors, but it helped the foreign creditors by putting the equity in the American assets into concrete form instantly available to them in an action at law. (*Hollins* v. *Brierfield Coal & Iron Co.,* 150 U. S. 371; *McDonald* v. *Williams,* 174 U. S. 397; *Sunderlin* v. *Terry,* 95 Conn. 713; *State* v. *Martin,* 77 Conn. 142; *Matter of Braus,* 248 Fed. Rep. 55; *Scripp* v. *Crawford,* 123 Mich. 173; *Plant* v. *Billings Drew Co.,* 127 Mich. 11; *Kingman & Co.* v. *Mowry,* 182 Ill. 256; *Baker* v. *Naglee,* 82 Va. 876; *Skinner* v. *Southern Groceries Co.,* 174 Ala. 359; *Jordan* v. *Lynch Land Co.,* 83 Ind. App. 33; *Shumaker* v. *Davidson,* 116 Iowa, 569; *Coaldale Coal Co.* v. *Nat. Bank of Camden,* 142 Penn. St. 288; *Maskell* v. *Spokane Cycle & Auto Supply Co.,* 100 Wash. 16; *Densmore Commission Co.* v. *Shong,* 98 Wis. 380.) Sturhahn and the directors had all the authority and power they needed. The Russian corporation not merely authorized the transfer, but it ratified it and accepted its benefits and is now estopped to question it. (*James & Co.* v. *Second Russian Ins. Co.,* 239 N. Y. 248; *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62; *Castle* v. *Lewis,* 78 N. Y. 131; *Woodruff* v. *Erie Ry. Co.,* 93 N. Y. 609; *Jourdan* v. *L. I. R. R. Co.,* 115 N. Y. 380; *Holmes* v. *Willard,* 125 N. Y.

75; *Linkauf* v. *Lombard,* 137 N. Y. 417; *Vought* v. *Eastern B. & L. A.,* 172 N. Y. 508; *Wormser* v. *Met. St. Ry. Co.,* 184 N. Y. 83; *Wallace* v. *Walsh,* 125 N. Y. 26; *Castle* v. *Lewis,* 78 N. Y. 131; *St. Louis R. R. Co.* v. *Terre Haute R. R. Co.,* 145 U. S. 393; *Hervey* v. *Midland R. R. Co.,* 28 Fed. Rep. 164.)

O'BRIEN, J.    During the year 1904, the Rossia Insurance Company of Petrograd, a corporation organized under the laws of the former Russian Empire, established a United States department of its business at Hartford, Conn. This department conducted reinsurance in this State and many other States. It was entirely in charge of Carl F. Sturhahn who possessed full power of attorney to do all things which the Rossia by its charter was authorized to do. Although this department was not then incorporated, its status was analogous to that of a corporation and it was managed on a basis entirely separate from the European affairs of the company. Pursuant to sections 27 and 28 of the Insurance Law of this State (Cons. Laws, ch. 28) and to a similar statute of Connecticut, the Rossia created within this country a capital corresponding to that of a domestic corporation. This capital consisted of bonds deposited with the Superintendents of Insurance of Connecticut, New York and Ohio of the value of $709,000 and other bonds, cash and real estate of the value of $8,819,613.86 held by three citizens of this country under deeds of trust. By statute such property constituted security for business transacted by the Rossia " in this country and not elsewhere." (Insurance Law, section 27; *Matter of People* (*Norske Lloyd Ins. Co.*), 242 N. Y. 148, 159.)

As early as 1907 the directors at Petrograd had seriously considered incorporating their American business. Nothing definite, however, was accomplished until the year 1915 when the Connecticut Legislature enacted a statute authorizing the incorporation of this defendant and in

1917 that authority was renewed.  The complaint alleges that defendant, the Rossia Insurance Company of America, is a corporation organized and existing under the laws of Connecticut and the answer does not deny such allegation.  In July, 1918, 2,450 of the 2,500 shares of defendant were subscribed by the Rossia of Petrograd and officers were elected.  Issue of stock was delayed by the absence of approval by the United States government which then regulated investment of capital as a war emergency measure.  In February, 1919, shortly after our government relinquished that power, the 2,450 shares, having been paid for with funds from one of the foreign accounts of the Russian company, were issued to Sturhahn as trustee for the Rossia of Petrograd and by him deposited in escrow with a trust company at Hartford until released by the Superintendent of Insurance of Connecticut.  These shares were later increased to 3,950 shares and were transferred to the Societe Commerciale and Financiere Caross, a French holding company organized by shareholders and members of the board of directors of the Rossia for the purpose of concentrating the assets of the Rossia existing outside of Russia.  In 1922 the stock was sold to Kidder, Peabody & Company of New York and marketed to many persons residing in this country.  The Rossia has had no interest in this defendant since March, 1922.

While the incorporation of defendant was in progress, the Bolshevici revolution occurred.  In November, 1918, the Soviet government issued its decree against all insurance corporations controlled by private capital.  Insurance was declared a State monopoly, all private insurance companies were made subject to liquidation, and upon their liquidation all their available property was to become the property of the Russian Socialist Federated Soviet Republic.  Liquidation was ordered to be completed not later than April 1, 1919.

In an instrument called a multipartite agreement made

effective as of April 1, 1919, the Rossia of Petrograd and the Rossia of America with the consent of the Superintendent of Insurance of this State and with the concurrence of thirty-three insurance companies conducting business in the United States and having reinsurance treaties with the Russian company, executed a transfer of all the assets except $491,000 and all liabilities of the Russian company in this country to the recently organized Connecticut corporation, this defendant. The assets so transferred exceeded liabilities by the sum of $2,388,527.84. By the terms of the agreement, the new corporation assumed all the obligations of the old one and the Russian company was completely released from all its insurance liabilities in this country.

Prior to April 1, 1919, the Russian corporation had become indebted to plaintiff's assignor, the Eagle, Star and British Dominions Company, Ltd., an English corporation. The indebtedness grew out of certain marine reinsurance treaties existing between those corporations and was contracted at London and Petrograd. None of it arose from transactions in this country. Plaintiff, alleging that it has no remedy at law, that the Russian corporation has no property anywhere except the property which had been assigned to this defendant and that the assignment of the American property was made with intent to hinder, delay and defraud creditors, that it was without authority and was not based upon any consideration, demands that the transfer be adjudged fraudulent and void as against plaintiff and that defendant be adjudged to hold in its possession funds of the Russian company properly applicable to payment of plaintiff's claim and that defendant be adjudged to pay the amount of that claim. The basis of the action as stated by plaintiff's counsel on the trial is the transfer of assets shown in the schedule attached to the multipartite agreement. The Appellate Division, reversing the Special Term, found that the Russian company's assignment of its United

States business to this defendant was made without
fraud, for adequate consideration, with due authority
and at a time when the Rossia was solvent. A careful
examination of the whole case forces the conclusion that
the judgment must be affirmed.

No element of fraud in the assignment can be detected.
The good faith of all parties seems quite apparent. Every
insurance company in this country having treaties with
the Rossia of Petrograd consented to the substitution of
the Connecticut corporation and accepted it and the
property transferred to it as security for any indebted-
ness which might grow out of such treaties. The statu-
tory trustees, men highly reputable in the commercial
affairs of this country, executed assignments and made
physical delivery of the bonds, cash and real estate held
by them under their deed of trust. Their conduct was
regulated by their conviction that American creditors
would thus be more fully protected. The whole proceed-
ing received the approval of the Insurance Superintendents
of three States and of the Superior Court of Connecticut.
No one familiar with insurance business remained igno-
rant of the retirement of the Russian company from active
affairs in this country and the entrance and participation
into those affairs by its successor, this defendant. Even
plaintiff's assignor concluded a treaty with the new
corporation. The assignment was not made for the
purpose of defeating the claims of foreign creditors of the
Rossia. At the time of the transfer, the Rossia's manager
in this country was not aware of the existence of plaintiff's
claim. The purpose of the assignment clearly appears to
have been based upon the idea of conserving the assets of
the old corporation at a time when it was threatened with
destruction in the place of its origin and with liquidation
in this State. The Russian corporation is not shown to
have been insolvent at the time. Insurance business
continued to be transacted in Europe. The management
departing from Petrograd and advancing before the

spreading revolution, wrote policies at Moscow, Kiev and cities in southern Russia. Such business continued for a year and has not been proved unprofitable. Discontinuance in the United States cost the parent company nothing. It owned the capital stock of the new corporation and this corporation owned the assets formerly held and still held as security for American creditors. The Russian company saved its property in this country, continued to protect American creditors and injured no one. It did not, without consideration, give away its assets. In different corporate form, it retained them for the benefit of its American creditors.

In normal times under a government recognized by our own as a sovereign even *de facto,* the question of authority to effect the transfer might become the subject of serious doubt. If the decrees of the Soviet Republic were for all purposes accorded full credit by our government, if they were recognized in the largest measure as emanating from duly constituted authorities of a sovereign State, the Russian corporation on April 1, 1919, might be regarded as dead, its assets confiscated by the Republic, its liabilities obliterated and its directors mere fugitives and refugees shorn of all power even to conserve its property amid the chaos of revolution. We have never recognized that government. Its decrees are treated as a nullity except in so far as there is need to recognize them for the purpose of promoting justice and equity as we regard justice and equity. (*Wulfsohn* v. *Russian Republic,* 234 N. Y. 372; *Russian Republic* v. *Cibrario,* 235 N. Y. 255; *James & Co.* v. *Second Russian Insurance Co.,* 239 N. Y. 248; *Russian Reinsurance Co.* v. *Stoddard,* 240 N. Y. 149; *Joint Stock Company* v. *Nat. City Bank,* 240 N. Y. 368; *First Russian Insurance Co.* v. *Beha,* 240 N. Y. 601, 602; *Matter of People [Second Russian Insurance Co.],* 243 N. Y. 524; *Sliosberg* v. *N. Y. Life Ins. Co.,* 244 N. Y. 482.) Frank admission may be made that, on the record before us and on the basis of strict interpre-

tation of law, Sturhahn's authority to act for the Rossia of Petrograd to the extent of assigning all its assets and liabilities to the new corporation and of holding as trustee for the old company the shares of stock of the new might be deemed to be lacking if it were not supplied by an emergency so great as to invest him by force of its existence with extraordinary powers. The letter of the law, as it existed under the empire of the Czar, may have forbidden investment by a Russian corporation in the shares of any other corporation. That law had been swept away by the power of revolution. The decree of the Soviet Republic assumed to confiscate " all available property " of the Rossia. If we were to recognize and enforce that destructive proclamation, the Bolshevik government rather than this plaintiff would be the gainer. When old institutions have fallen and none which we will recognize have succeeded, how shall we deal with foreign owners of property within our jurisdiction? We cast aside rigid rules made to control other conditions. We insist upon honest conduct, but when the morality of the proceeding satisfies us as a court of equity, we will not obstruct the conservation of property accumulated and segregated by command of our own statute for the protection and security of business transacted by aliens " in this country and not elsewhere." We view with some degree of indulgence the honest though possibly irregular efforts of a resident agent of foreign property and of statutory trustees controlling that property when they are far removed from the owner, when mails and cables are interrupted, when old governments and old laws are overthrown and no new government and no new law acceptable to our institutions have been established. Our attitude is fully expressed when we say " the problem before us is governed, not by any technical rules, but by the largest considerations of public policy and justice." (*James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248, 256.) The Rossia of Petrograd may, under the Soviet

decree, have ceased on April 1, 1919, to exist in Russia. Even here, its corporate life may have expired. It was half dead and half alive. We make no effort to define the authority of its directors as such. We do hold that these proscribed individuals fleeing from the fury of the revolution retained the power to conserve property in this country as far as the courts of New York can protect it. Sturhahn and the trustees here exerted themselves to preserve assets from confiscation by revolutionists whose authority our government rejects. The acts of the manager and the trustees, ratified and confirmed by the refugee directors in Paris, are recognized by us as just, equitable and altogether legitimate acts of conservation.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN and KELLOGG, JJ., concur.

Judgment affirmed, etc.