UNITED STATES OF AMERICA, Appellant, *v.* PRESIDENT
AND DIRECTORS OF THE MANHATTAN COMPANY,
Respondent, Impleaded with Others.

Argued November 19, 1937; decided January 11, 1938.

*Edward J. Ennis* and *Leon E. Spencer* for appellant. The complaint states a cause of action against respondent and should not have been dismissed. (*United States* v. *Belmont*, 85 Fed. Rep. [2d] 542; 301 U. S. 324; *Dougherty* v. *Equitable Life Assur. Society*, 266 N. Y. 71; *Kennison* v. *Stewart*, 93 U. S. 155; *Russell* v. *Lasher*, 4 Barb. 232; *Hooper* v. *Tuckerman*, 3 Sandf. 311.) The assignment for benefit of creditors is invalid and should be vacated.

(*Matter of People* [*Northern Ins. Co.*], 262 N. Y. 453; *United States* v. *Belmont,* 301 U. S. 324; *Issaia* v. *Russo-Asiatic Bank,* 266 N. Y. 37; *Dougherty* v. *Equitable Life Assur. Society,* 266 N. Y. 71; *United States* v. *Bank of New York & Trust Co.,* 77 Fed. Rep. [2d] 866; *Rogers* v. *Pell,* 154 N. Y. 518; *Vanderpoel* v. *Gorman,* 140 N. Y. 563; *Erie R. R. Co.* v. *City of Buffalo,* 180 N. Y. 192; *Severnoe Securities Corp.* v. *London & Lancashire Ins. Co.,* 255 N. Y. 120.)

*Robert J. Sykes* and *William C. Morris* for respondent. The executive agreement is subordinate to the Constitution. (*Geofroy* v. *Riggs,* 133 U. S. 258; *The Cherokee Tobacco,* 11 Wall. 616; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Pearsall* v. *Great Northern Ry. Co.,* 161 U. S. 646; *Merchants Bank* v. *Ballou,* 98 Va. 112; *Cetofonte* v. *Camden Coke Co.,* 78 N. J. L. 662; *Pritchard* v. *Norton,* 106 U. S. 124; *Gilman* v. *Tucker,* 128 N. Y. 190; *McCullough* v. *Virginia,* 172 U. S. 102; *Vladikavkazsky Ry. Co.* v. *New York Trust Co.,* 263 N. Y. 369; *James & Co.* v. *Second Russian Ins. Co.,* 239 N. Y. 248; *Russian Volunteer Fleet* v. *United States,* 282 U. S. 481.) The language of the assignment does not include a claim against the respondent. (*Crapo* v. *Kelly,* 16 Wall. 610; *Rose* v. *Himely,* 4 Cranch, 241; *Gelston* v. *Hoyt,* 3 Wheat. 246; *United States* v. *Buford,* 3 Pet. 12; *Feeser* v. *Feeser,* 15 Atl. Rep. 406; *Rutez* v. *Sagamore Valley Mut. Fire Ins. Co.,* 94 N. W. Rep. 191; *Yocum* v. *Allen,* 5 N. E. Rep. 909; *United States* v. *State Bank of North Carolina,* 31 U. S. 29.) The assignment conveyed no title upon which this suit could be brought. (*Spencer* v. *Standard Chemicals & Metals Corp.,* 237 N. Y. 479.)

*P. C. Whipp* for Paul Lucke, as surviving director of Moscow Fire Insurance Company, etc., *amicus curiæ.*

RIPPEY, J. Upon motion of defendant, President and Directors of the Manhattan Company, successor to the Bank of the Manhattan Trust Company, as agent or

depository of the Northern Insurance Company of Moscow and as assignee for the benefit of creditors of the Northern Insurance Company of Moscow, under the provisions of rule 106 of the Rules of Civil Practice, an order was made at Special Term dismissing the complaint on the ground that the complaint fails to state facts sufficient to constitute a cause of action. The Appellate Division has unanimously affirmed and has certified to us that in its opinion a question of law is involved which ought to be reviewed by this court.

For present purposes, every fact set forth in the complaint must be deemed to be true. Referring to the facts alleged, in so far as it is deemed here necessary, the following appears:

Prior to 1918 the Northern Insurance Company of Moscow was an insurance company, organized and existing under the laws of the Empire of Russia, and in 1918 and thereafter had assets within the State of New York consisting, in part, of a deposit of cash, securities and other assets with the Superintendent of Insurance as a statutory requirement preliminary to and as a condition of its being permitted to transact business within this State. During the years 1918 and 1919, by decrees, laws, enactments and orders of the Russian State, the business of insurance in all its forms was proclaimed to be a monopoly of the Soviet government, all Russian insurance companies were dissolved, terminated and liquidated, their property and assets of every kind and wherever situate were nationalized, their debts, including the obligation to creditors who are named as defendants in this action, canceled, extinguished, annulled and discharged, the rights of all stockholders in and to such property and assets were extinguished and all obligations and liabilities of such companies to them were discharged. As a consequence, the property and assets of the insurance company within the State of New York became the property of the Russian State and so remained until November 16, 1933,

when the Union of Soviet Socialist Republics released and assigned to plaintiff all amounts admitted to be due or found to be due to the assignor from American nationals. This assignment included surplus funds and assets of approximately $332,994.65 which were received by the defendant bank as depository and now remain in its possession, for the recovery of which this suit is brought.

It further appears from the complaint that on June 9, 1926, the Superintendent of Insurance of the State of New York was appointed liquidator of the United States branch of the Northern Insurance Company by an order of the Supreme Court of this State, took possession of its assets and thereafter proceeded to liquidate its business to the end that he satisfied the claims of domestic creditors, and the surplus consisting of cash, securities and other assets amounting approximately to $245,307.60 remained in his possession. Thereupon the Superintendent of Insurance brought his account into court and requested a direction concerning the disposition of the surplus. That question reached this court. By a decision February 14, 1931, the surplus was directed paid to Boris Schwetzoff and Nicholas Goutchkoff, as surviving directors of the insurance company, who constituted less than a quorum thereof, as conservators of its property, upon their filing with the court a duly approved surety bond in a penalty equal to the sum to be delivered (*Matter of People* [*Northern Ins. Co.*], 255 N. Y. 433). Such conservators, being unwilling to act, before accepting any funds undertook, on May 6, 1932, to execute and deliver to the Bank of the Manhattan Trust Company, predecessor of defendant, a general assignment of all the property of the insurance company in trust for the benefit of its creditors. The assignment and trust were accepted by the trust company and recorded in the New York County Clerk's office on June 26, 1932. The trust company also filed a bond which was approved by a justice of the Supreme Court on July 2, 1932. On March 7, 1933, this court

granted a reargument of the former appeal, recalled the remittitur and modified its former decision by directing that the surplus assets might be turned over by the Superintendent of Insurance to the trust company *as agent or depository* but they were not to be withdrawn except upon the order of a court of competent jurisdiction (*Matter of People* [*Northern Ins. Co.*], 262 N. Y. 453).

The trust company received $245,307.60 from the Superintendent of Insurance on August 3, 1933, and on November 13, 1933, undertook, as such agent and depository, pursuant to an order of the Supreme Court, to deliver to itself as assignee for the benefit of creditors of the insurance company all of such assets and property. On March 13, 1934, defendant received other assets amounting to $87,686.45. Thereafter, defendant, *as assignee*, filed its account and a referee was appointed by the Supreme Court to take and state the account and to hear objections to any claims and to report to the court. Pending final report of the referee (not yet filed) the court made an *ad interim* order directing payment of claims of certain foreign creditors of the insurance company and counsel fees.

Demand on defendant was made by plaintiff for the funds in question on August 24, 1934, and refused, and on the following day a suit in equity was commenced by plaintiff against defendant in the United States District Court for the Southern District of New York to recover the aforesaid funds. On December 20, 1934, the complaint was dismissed by the District Court (10 Fed. Supp. 269) on the ground of insufficiency. This order was affirmed by the Circuit Court of Appeals, Second Circuit, on May 27, 1935 (77 Fed. Rep. [2d] 880), and by the United States Supreme Court on January 6, 1936 (269 U. S. 463). Affirmance by the Supreme Court was placed on the ground that the District Court was without jurisdiction to entertain the suit inasmuch as the funds were in the custody of the Supreme Court of this State.

Plaintiff thereupon made an unsuccessful attempt to intervene and secure relief in the assignment proceedings instituted by defendant and then pending in the Supreme Court for distribution of the fund. It was held that relief was possible only by way of an independent action in equity and the order entered thereon was " without prejudice to the institution of the time-honored form of action." Pending hearing of such motion to intervene, a stay in the assignment proceedings had been granted, but that was vacated by the order denying plaintiff's application to intervene and further hearings were undertaken before the referee to determine the claims of creditors of the insurance company.

Plaintiff thereupon commenced this action in equity, alleging that it " possesses and asserts a sovereign title, right and interest under the Constitution, laws, treaties, and authority of the United States in and to the funds which are the subject of this action," to restrain further action in the assignment proceedings and for a determination herein of its title and rights to the fund. It seeks to bring in all adverse claimants to the fund, including friendly aliens, to the end that the rights and equities which any or all claimants may have to the surplus may be adjudicated in one action without clogging the courts with a multiplicity of suits, that plaintiff's rights may be determined and that any moneys to which it is entitled may be held within the control of the court and not distributed and dissipated beyond hope of recovery if it should be adjudicated that it is entitled thereto. It seeks to have the assignment by the directors of the insurance company to defendant for the benefit of creditors set aside and declared void and to have it adjudged that defendant holds the surplus as agent and depository only as theretofore directed by this court and prays that defendant may be required to account and turn over such surplus to plaintiff. It is clear from the allegations of the complaint that great and irreparable damage may result if plaintiff

is denied relief herein and that it has no adequate and no other remedy at law.

Certain decisions of this court made subsequent to 1918 involving the Northern Insurance Company and the liquidation of its assets, the situs of which was within the State of New York or relating to the affairs of other Russian corporations having property within this jurisdiction at the time of or subsequent to the Soviet decree of confiscation, were rendered prior to November 16, 1933, the date of recognition of the Soviet government by the government of the United States (*Wulfsohn* v. *Russian S. F. S. Republic*, 234 N. Y. 372; *Russian S. F. S. Republic* v. *Cibrario*, 235 N. Y. 255; *Matter of People* [*City Equitable F. Ins. Co.*], 238 N. Y. 147, 158; *Sokoloff* v. *National City Bank*, 239 N. Y. 158; *James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248; 240 N. Y. 581; *Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149, 682; *Joint Stock Co.* v. *National City Bank*, 240 N. Y. 368; *First Russian Ins. Co.* v. *Beha*, 240 N. Y. 601; *Matter of People* [*Norske Lloyd Ins. Co.*], 242 N. Y. 148; *Matter of People* [*Second Russian Ins. Co.*], 243 N. Y. 524; 255 N. Y. 412, 436; *James & Co.* v. *Rossia Ins. Co.*, 247 N. Y. 262; *Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23; *Severnoe Securities Corp.* v. *London & Lancashire Ins. Co.*, 255 N. Y. 120; *Matter of People* [*Russian Reinsurance Co.*], 255 N. Y. 415; *Matter of People* [*First Russian Ins. Co.*], 255 N. Y. 428; *Matter of People* [*Northern Ins. Co.*], 255 N. Y. 433; 261 N. Y. 616, 624; 262 N. Y. 453; *Salimoff & Co.* v. *Standard Oil Co.*, 262 N. Y. 220). Others have been rendered since recognition. (*Vladikavkazsky Ry. Co.* v. *New York Trust Co.*, 263 N. Y. 369; *Dougherty* v. *Equitable Life Assur. Soc.*, 266 N. Y. 71; *Matter of People* [*First Russian Ins. Co.*], 266 N. Y. 421.)

In all cases above referred to where the question was discussed we have said that, prior to recognition of the Soviet government by the government of the United

States, we would generally decline to recognize the extraterritorial effect of the Soviet decrees by which Russian corporations existing at the time of the Revolution were nationalized, their property confiscated and their debts repudiated, as affecting contracts not made and/or to be performed in Russia or property located within this State, on the ground that such acts were contrary to the public policy of the State of New York as well as to the public policy of the United States. We suggested in *James & Co.* v. *Second Russian Ins. Co.* (*supra*), and asserted in *Vladikavkazsky Ry. Co.* v. *New York Trust Co.* (*supra*), that our decision would be the same even after recognition. Nevertheless, we stated in *Salimoff & Co.* v. *Standard Oil Co.* (*supra*), and definitely decided in *Dougherty* v. *Equitable Life Assur. Soc.* (*supra*), where, in the latter case a contract made by a Russian national in Russia and to be performed there was involved, that recognition by the government of the United States of the Soviet government validates all decrees of that government from the time of its inception. But we have not held that the effect of such decrees either before or after recognition can compel our courts to refrain from proceeding according to the law and policies of our forum as to assets of the nationalized corporation within our jurisdiction.

In *United States* v. *Belmont* (85 Fed. Rep. [2d] 542) it was held that the situs of the bank deposits there in question was within the State of New York and the nationalization decree, if enforced, would put into effect an act of confiscation which would be contrary to the public policy of this State and likewise infringe the public policy of the United States (citing *Vladikavkazsky Ry. Co.* v. *New York Trust Co.*, *supra;* Laws of 1936, ch. 917; Civ. Prac. Act, § 977-b), but, upon reversal on appeal, the Supreme Court stated: " We take judicial notice of the fact that coincident with the assignment set forth in the complaint, the President recognized the Soviet Govern-

ment, and normal diplomatic relations were established between that Government and the Government of the United States, followed by an exchange of ambassadors. The effect of this was to validate, so far as this country is concerned, all acts of the Soviet Government here involved from the commencement of its existence. The recognition, establishment of diplomatic relations, the assignment and agreements with respect thereto, were all parts of one transaction, resulting in an international compact between the two governments. * * * No state policy can prevail against the international compact here involved. * * * In respect of all international negotiations and compacts, and in respect of our foreign relations generally, state lines disappear. As to such purposes the State of New York does not exist. Within the field of its powers, whatever the United States rightfully undertakes, it necessarily has warrant to consummate. And when judicial authority is invoked in aid of such consummation, state constitutions, state laws, and state policies are irrelevant to the inquiry and decision. It is inconceivable that any of them can be interposed as an obstacle to the effective operation of a federal constitutional power. * * * The substantive right to the moneys, as now disclosed, became vested in the Soviet Government as the successor to the corporation; and this right that government has passed to the United States. It does not appear that respondents have any interest in the matter beyond that of a custodian." (301 U. S. 324, 327, 330, 331, 332).

Although the decree appropriating property and assets of the insurance company extended to such property and assets of every kind and wherever situated, we find that the decision in the *Belmont* case goes no further than to hold, in so far as it may be applicable here, that recognition must be given to the validity of the confiscation decree by which the assets of the insurance company located in this country became the property of the Soviet govern-

ment and by it were passed on by assignment to the plaintiff in so far only as the act of confiscation did not interfere with the rights and equities of our nationals in such property and of adverse claimants thereto to the extent that our courts may be opened to them for the assertion of their claims. To the extent indicated the assignment of November 16, 1933, from the Soviet government to plaintiff has been held valid by the decision in the *Belmont* case. The assignment there held valid is the identical assignment here involved and its validity is beyond attack in this court.

It is clear that we would not in this forum recognize the confiscation decree of 1918 to the end that .the Soviet government or its assignee might assert title to the assets of the foreign corporation within our jurisdiction to the prejudice of our own nationals who are creditors. The claims of domestic creditors of the insurance company have been fully satisfied in the proceedings instituted and carried on by the Superintendent of Insurance. Had there been a receiver at the domicile of the corporation it would be our duty to turn over the surplus to such receiver. (*Matter of People [City Equitable Fire Ins. Co.]*, 238 N. Y. 147, 156.) But there is no receiver of the Russian insurance company at its domicile. In Russian territory it ceased to exist as a corporation. The corporation has been nationalized and its assets confiscated. We have held, however, " that the surplus must be made available for the payment of creditors and policyholders with claims founded upon foreign business," and that, upon appearance of solvency and lack of showing " that waste or spoliation of the assets is threatened or intended," the surplus should be turned over to the board of directors of said corporation, " represented by a quorum, [who] were still competent to act." (*Matter of People [Russian Reinsurance Co.]*, 255 N. Y. 415, 422, 425.)

The plaintiff here as assignee of the Soviet government holds no greater title and stands in no better position

than its assignor. Are we bound to turn over the entire surplus to plaintiff or may plaintiff be entitled in this forum only to such portion thereof, if any, as may not be equitably subject to the claims of foreign creditors? Those questions remain for determination on the trial of this action. So far as this appeal is concerned there are but two parties before this court, namely, the assignee of the Soviet government who acquired title to the surplus by virtue of the confiscation decree on the one hand, and the depository of the surplus on the other. True, the complaint gives notice that foreign creditors have attempted to file or have filed claims in an unauthorized proceeding on the theory that defendant was an assignee for the benefit of creditors. That does not change the situation so far as concerns the question before the court. The interest of plaintiff is sufficiently shown to give it standing in this court. On the face of the complaint it states facts sufficient to constitute a cause of action. (*United States* v. *Belmont*, 301 U. S. 324.) What outstanding equities there are or may be affecting the surplus will become our duty to determine only after those who may be adverse claimants are before the court. We have no information at hand to indicate that the debtor, the corporation whose assets were confiscated, did not at the time of confiscation and does not now have sufficient assets in the domiciles abroad of the several foreign creditors to satisfy their alleged claims in the jurisdictions of their domicile. Neither do we have any information to indicate what relation, if any, the claims of these foreign creditors had to the business of the insurance company transacted within the State of New York. *Prima facie*, at least, plaintiff may be entitled to the whole fund.

The board of directors of the insurance company consisted of five regular members and two alternate members, of whom two only survive. Whether regular or alternate, the two members who were named as conservators did not constitute a quorum. In directing that

the surplus be paid over to the two surviving directors, we gave them no authority to make an assignment to any one for the benefit of the creditors of the Northern Insurance Company or for any other purpose. They were entirely unauthorized to act for the corporation under Russian law, for the corporation had long since been dissolved. We recognized in *James & Co.* v. *Rossia Ins. Co.* (247 N. Y. 262), again in *Severnoe Securities Corp.* v. *London & Lancashire Ins. Co.* (255 N. Y. 120), and again in *Matter of People* [*Northern Ins. Co.*] (255 N. Y. 433) that former directors, though less than a quorum, retained power in this country to conserve assets of the corporation whose situs was in the State of New York to the extent that our courts were able to protect those assets and that they might be named by the courts of our State as conservators thereof. Beyond that we did not go. When our attention was called on reargument of the decision in which we authorized the directors to act as conservators of the surplus assets of the American branch of the insurance company still in the possession of the Superintendent of Insurance of this State, we pointed out in clear and explicit language incapable of misinterpretation or misunderstanding that the assignment from them to the Bank of the Manhattan Trust Company was not authorized by our previous decision and thereby gave definite warning of what the effect of the assignment might be and what weight might be accorded to it. No inference could be indulged that by either decision in which we authorized release of the funds to the directors or to defendant's predecessor we recognized directly or indirectly the validity or propriety of the assignment by the directors. We merely authorized discharge of the Superintendent of Insurance from further obligation with respect to the surplus upon turning such surplus over (1) to the surviving directors as conservators, and (2) later to the Bank of the Manhattan Trust Company in a *capacity of depository* to hold until the further order of

the court. Whether assuming to act on the strength of the alleged assignment from the former directors or otherwise, defendant was without authority voluntarily to assign to itself for the benefit of creditors or for any other purpose the funds which were committed to its care. It became merely an officer of the court to act, when legally authorized to act by the court of which it was an officer, with reference to the disposition of the funds.

Assuming, without deciding because the matter is not before us on this appeal, that the proceeding for the distribution of the surplus in the possession of defendant was authoritatively taken, plaintiff might have been permitted to intervene therein and assert its rights. The opportunity to there present its claims was not given. From the order denying it the right to intervene, the time to appeal has expired. No course was left open to it except the commencement of this action. It would be unjust and inequitable to deny it the right to institute this action and assert and have adjudicated its alleged title and right to the funds. The creditors of the insurance company who have asserted claims to the fund and have been named defendants in this action but have not been so far served with process presumably will be served. If not, they or others not named who may conceive that they have an interest in the surplus may undertake to intervene and have their rights adjudicated. Indeed, plaintiff recognizes the right of the named creditors to have their claims adjudicated in this action by making them parties and, additionally, the right of others to appear, in the prayer for relief. Nothing here said, however, may be construed as a determination of the right of foreign creditors to intervene. That question may be settled when all the facts are properly before the court.

The judgment of the Appellate Division and the order of the Special Term should be reversed, with costs in this court and in the Appellate Division, and the motion to dismiss the complaint denied, with ten dollars costs.

LEHMAN, J. (dissenting). The moneys of the Northern Insurance Company, to which the United States of America asserts a claim, are in the custody of the Supreme Court of the State of New York, and are held by the defendant as " agent or depository." ( *United States* v. *President & Directors of Manhattan Co.,* 296 U. S. 463.)

The moneys of the insurance company were placed in the custody of the court before the Soviet government was recognized, and while this State refused to give effect to decrees of the Russian government confiscating the property of the insurance company. Since recognition of the Soviet government by the United States, the courts of this State are bound to give effect to those decrees, and the United States of America, as assignee of the Soviet government, now has succeeded to any rights which, but for such decree, the insurance company would have. ( *United States* v. *Belmont,* 301 U. S. 324.)

Claiming ownership of the moneys now in the custody of the Supreme Court, the United States of America began a proceeding in the Federal court to compel payment to it. The Supreme Court of the United States held that it could not maintain that action. For moneys in the custody of the Supreme Court of this State, the plaintiff must resort to that court. ( *United States* v. *President & Directors of Manhattan Co., supra.*) Proceedings are pending in that court for the distribution of these moneys. Claims have been presented. The defendant trust company has filed an accounting, and a referee has been appointed to pass upon the accounts and to determine the validity of the claims. The United States of America made a motion to intervene in those proceedings. Its motion was denied, and it was relegated to this action in equity for the assertion of its claim to the moneys.

There can be no doubt that in some form the United States of America must be given opportunity to assert its claim, and that the only question that remains open after the decision in the *Belmont* case is whether its claim

to the moneys of the insurance company is superior to the claims of others which have been filed in the accounting proceedings in the Supreme Court. The difficulty is that by denial of the motion to intervene, the United States of America cannot appear in those proceedings to contest the validity of the claims, and, on the other hand, the claimants cannot assert their claims in this action unless they are made or become parties to it. The purpose of the equity action is to obtain the moneys from the defendant bank. The defendant bank is an officer of the court. The bank must hold the moneys awaiting the further order of the court. That further order can be properly made only in accounting proceedings, or other proceedings in which both the defendant and all claimants can be heard. For that reason it seems clear to me that the motion of the United States to intervene should have been granted. I do not think that because the Supreme Court of the State of New York, at Special Term, erred in denying the motion for leave to intervene such error lays the basis for an action in equity against an officer of the court to compel him to deliver property in his custody. I suggest that for this reason the judgment of the courts below dismissing the equitable action should be affirmed, pointing out at the same time that the United States has an absolute right to intervene in the pending accounting proceeding of the custodian, and that a renewed motion for such relief should be granted.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur with RIPPEY, J.; LEHMAN, J., dissents, in opinion.

Judgment accordingly.