Moscow Fire Insurance Company et al., Respondents, *v.* Bank of New York and Trust Company, as Agent, et al., Respondents.

Samuel E. Morro et al., Respondents, *v.* Moscow Fire Insurance Company et al., Respondents.

United States of America, Appellant.

Argued October 24, 1938; decided April 11, 1939.

290

*Lamar Hardy, United States Attorney (Leon E. Spencer, David E. Hudson, Edward J. Ennis, David W. Wainhouse, Aaron B. Holman* and *Henry Munroe* of counsel), for appellant. The Soviet government became the owner of the surplus fund of the Moscow Fire Insurance Company in New York under its nationalization legislation. (*Fitzpatrick* v. *International Ry. Co.*, 252 N. Y. 127; *Bank of China* v. *Morse*, 168 N. Y. 458; *Leitch* v. *Atlantic Mut. Ins. Co.*, 66 N. Y. 100; *Gould* v. *Gould*, 192 N. Y. Supp. 572; *Buerger* v. *New York Life Ins. Co.*, 43 T. L. R. 601; *Slater* v. *Mexican National R. R. Co.*, 194 U. S. 120; *Reilly* v. *Steinhart*, 217 N. Y. 549; *Badische Anilin & Soda Fabrik* v. *Klipstein & Co.*, 125 Fed. Rep. 543; *Baron de Bode's Case*, 8 Q. B. 260; *Sussex Peerage Case*, 11 Cl. & F. 85; *Dougherty* v. *Equitable Life Assur. Society*, 266 N. Y. 71.) There is no public policy of New York which bars the enforcement of the claim of the Soviet government in the

hands of the United States of America as assignee. (*United States* v. *Belmont*, 301 U. S. 324; *United States* v. *President & Directors of Manhattan Co.* [*Northern Ins. Co.*], 276 N. Y. 396.) The Soviet government became the liquidator and statutory successor of the Moscow Fire Insurance Company and is entitled to all its assets. The United States is entitled to the surplus fund as the assignee of the Soviet government, and it is the duty of our courts to direct that the surplus fund be turned over to it. (*Bank of Augusta* v. *Earle*, 13 Pet. 519; *Chicago Title & Trust Co.* v. *Forty-One Thirty-Six Wilcox Bldg. Corp.*, 302 U. S. 120; *Relfe* v. *Rundle*, 103 U. S. 222; *Martyne* v. *American Union Fire Ins. Co.*, 216 N. Y. 183; *Matter of People* [*Norske Lloyd Ins. Co.*], 242 N. Y. 148; *Cogliano* v. *Ferguson*, 245 Mass. 364; *Modern Woodmen of America* v. *Mixer*, 267 U. S. 544; *Royal Arcanum* v. *Green*, 237 U. S. 531; *Converse* v. *Hamilton*, 224 U. S. 243; *Bernheimer* v. *Converse*, 206 U. S. 316; *Canada Southern Ry. Co.* v. *Genhard*, 109 U. S. 527; *Matter of People* [*City Equitable Fire Ins. Co.*], 238 N. Y. 147; *Oetjen* v. *Central Leather Co.*, 246 U. S. 297; *Banque of France* v. *Chase Nat. Bank*, 33 Fed. Rep. [2d] 202.) The interest of the United States is superior at least to the claims of stockholders and to all claims of creditors subject to Russian law. (*Chicago Title & Trust Co.* v. *Forty-one Thirty-six Wilcox Bdg. Corp.*, 302 U. S. 120; *Canada Southern Ry. Co.* v. *Gebhard*, 109 U. S. 527; *Modern Woodmen of America* v. *Mixer*, 267 U. S. 544; *Dougherty* v. *Equitable Life Assur. Society*, 266 N. Y. 71.)

*Paul C. Whipp* and *Lounsbury D. Bates* for Paul Lucke, respondent. The situs of the tangible personal property here in question is and always has been in the State of New York, and neither in fact nor fiction can such situs be regarded as in Soviet Russia. (*James & Co.* v. *Russia Ins. Co.*, 247 N. Y. 262; *Matter of People* [*Norske Lloyd Ins. Co.*], 242 N. Y. 148; *James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248; *Comey* v. *United Surety Co.*, 217 N. Y. 268; *Morgan* v. *Mutual Benefit Life Ins. Co.*, 189 N. Y. 447;

*Martime* v. *International L. Ins. Soc.*, 53 N. Y. 339; *DeGanay* v. *Lederer*, 250 U. S. 376; *Burnet* v. *Brooks*, 288 U. S. 378; *Safe Deposit & Trust Co.* v. *Commonwealth of Virginia*, 280 U. S. 83; *Hutchison* v. *Ross*, 262 N. Y. 381; *de Bearn* v. *Safe Deposit & Trust Co.*, 233 U. S. 24; *United States* v. *Bank of New York & Trust Co.*, 296 U. S. 463.) The equitable right to the funds has been determined to be in the creditors and shareholders of the Russian companies wherever situate, and the subsequent proceedings have been in the carrying out of such determination; such determination became binding upon the funds and such equitable right cannot be taken away by the subsequent recognition of the Soviet government. (*Matter of People* [*Russian Reinsurance Co.*], 255 N. Y. 415; *Matter of People* [*Northern Ins. Co.— Moscow Fire Ins. Co.*], 255 N. Y. 433; *United States* v. *Bank of New York & Trust Co.*, 296 U. S. 463; *Sands* v. *Greeley & Co.*, 88 Fed. Rep. 130; *Guaranty Trust Co.* v. *United States*, 304 U. S. 126.) The evidence sustains the referee's finding of fact that it was not the purport nor intent of the Soviet decree of confiscation under which title is asserted to have been acquired by the Soviet government to apply to property situated outside of Soviet Russia. (*Mansbacher* v. *Prudential Ins. Co.*, 273 N. Y. 140; *Cuncio* v. *City of New York*, 275 N. Y. 20; *Genet* v. *Delaware & Hudson Canal Co.*, 163 N. Y. 173; *Bank of China* v. *Morse*, 168 N. Y. 458; *Fitzpatrick* v. *International Ry. Co.*, 252 N. Y. 127; *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347; *People ex rel. Commonwealth Ins. Co.* v. *Coleman*, 121 N. Y. 542; *People ex rel. West. F. I. Co.* v. *Davenport*, 91 N. Y. 574; *Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23.) Irrespective of the purport or intent of the Soviet decrees of confiscation, such decrees have no effect of their own force or by comity over the tangible personal property here involved, the disposition of which is to be governed by the American law applicable thereto. (*Hutchison* v. *Ross*, 262 N. Y. 381; *Weissman* v. *Banque De Bruxelles*, 254 N. Y. 488; *United States* v. *Guaranty Trust Co.*, 293 U. S. 340; *United States* v. *Guaranty*

*Trust Co.*, 304 U. S. 126; *Glaser* v. *Glaser*, 276 N. Y. 296; *Hilton* v. *Guyot*, 159 U. S. 113; *Second Russian Ins. Co.* v. *Miller*, 268 U. S. 552; *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265; *Baglin* v. *Cusenier Co.*, 221 U. S. 580; *James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248; *Matter of Waite*, 99 N. Y. 433; *Cole* v. *Cunningham*, 133 U. S. 107; *Huntington* v. *Attrill*, 146 U. S. 657; *Clark* v. *Williard*, 294 U. S. 211; 292 U. S. 112; *City Bank Farmers Trust Co.* v. *Schnader*, 293 U. S. 112; *Burnet* v. *Brooks*, 288 U. S. 378; *Pennington* v. *Fourth Nat. Bank*, 243 U. S. 269; *Pennoyer* v. *Neff*, 95 U. S. 714.) Under the law of the State of New York and under the law of the United States the Soviet decrees of confiscation were not effective to transfer to the Soviet government title to the tangible personal property here involved situated within the State of New York. (*Matter of People* [*Moscow Fire Ins. Co.*], 255 N. Y. 433; *Matter of People* [*Russian Reinsurance Co.*], 255 N. Y. 415; *James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248; *Matter of Second Russian Ins. Co.*, 250 N. Y. 449; *Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23; *Vladikavkazsky Ry. Co.* v. *N. Y. Trust Co.*, 263 N. Y. 369; *Dougherty* v. *Equitable Life Assur. Society*, 266 N. Y. 71; *United States* v. *Manhattan Co.*, 276 N. Y. 396; *Matter of People* [*City Equitable Fire Ins. Co.*], 238 N. Y. 147; *Loucks* v. *Standard Oil Co.*, 224 N. Y. 99; *State of Colorado* v. *Harbeck*, 232 N. Y. 71; *Matter of Long Sault Development Co.* v. *Kennedy*, 212 N. Y. 1; *Guaranty Trust Co.* v. *United States*, 304 U. S. 126; *Pennoyer* v. *Neff*, 95 U. S. 714; *Clark* v. *Williard*, 294 U. S. 211; *Cole* v. *Cunningham*, 133 U. S. 107.)

*Borris M. Komar* for Samuel E. Morro et al., respondents. Ample evidence sustains the findings of the referee that under Soviet law the Soviet government acquired no title to the American assets of the Moscow Fire Insurance Company. (*Hirsch* v. *New England Navigation Co.*, 200 N. Y. 263; *Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23; *People ex rel. Commonwealth Ins. Co.* v. *Coleman*,

121 N. Y. 542; *People ex rel. Westchester Fire Ins. Co.* v. *Davenport*, 91 N. Y. 574.) The international sovereignty of the United States and the State sovereignty of New York would be impaired by the enforcement of penal and confiscatory Soviet nationalization decrees. (*Truax* v. *Raich*, 239 U. S. 33; *Russian Volunteer Fleet* v. *United States*, 282 U. S. 481; *Asakura* v. *Seattle*, 265 U. S. 332; *United States* v. *President of Manhattan Co.*, 276 N. Y. 396; *Guaranty Trust Co.* v. *United States*, 304 U. S. 126; *United States* v. *Belmont*, 85 Fed. Rep. [2d] 542; *United States* v. *National City Bank*, 83 Fed. Rep. [2d] 236; *Ritter* v. *United States*, 28 Fed. Rep. [2d] 265; *Huntington* v. *Attrill*, 146 U. S. 657; *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265; *Lecouturier* v. *Rey*, [1910] A. C. 262; *Banca de Viszcaya* v. *Don Alfonso*, 151 L. T. Rep. 499; *Baglin* v. *Cusinier Co.*, 221 U. S. 580.)

*Hartwell Cabell* for Heckscher & Gottlieb et al., respondents. The final orders of the Court of Appeals made in 1931, one of the purposes of which was to determine what should be done with any residue remaining after payment of claims of the American creditors of the Russian insurance companies, are *res adjudicata* and not now open to collateral attack. (*Matter of People* [*Northern Ins. Co.*], 255 N. Y. 433; *Matter of People* [*Russian Reinsurance Co.*], 255 N. Y. 415; *Matter of People* [*First Russian Ins. Co.*], 255 N. Y. 428; *United States* v. *Bank of New York Co.*, 296 U. S. 463; *Guaranty Trust Co.* v. *United States*, 304 U. S. 126; *Erie Railroad Co.* v. *Tompkins*, 304 U. S. 64; *Ruhlin* v. *New York Life Ins. Co.*, 304 U. S. 202; *Pennoyer* v. *Neff*, 95 U. S. 714; *Matter of National Surety Co.*, 7 Fed. Supp. 959; *Grignon* v. *Astor*, 2 How. 319.)

*G. Frank Dougherty, Frederic C. Pitcher* and *Douglas M. Amann* for Gerson Jakubovic et al., respondents. The liquidation proceedings are actions *in rem* or *quasi in rem* and New York courts have exclusive jurisdiction, which remains unaffected by the United States recognition of Russia in 1933. The rights of creditors must, accordingly,

be determined in accordance with New York law and New York public policy. (*United States* v. *Bank of New York & Trust Co.*, 296 U. S. 463; *United States* v. *Belmont*, 301 U. S. 324; *Green* v. *Van Buskirk*, 5 Wall. 307; *Hervey* v. *R. I. Locomotive Works*, 93 U. S. 664; *Security Trust Co.* v. *Dodd, Mead & Co.*, 173 U. S. 624; *Clark* v. *Williard*, 294 U. S. 211; *Barth* v. *Backus*, 140 N. Y. 230; *Matter of Waite*, 99 N. Y. 433.) It is against the public policy of New York to enforce the Russian decrees against creditors seeking relief in the New York courts, and recognition has not changed this rule. (*Vladikavkazsky Ry. Co.* v. *New York Trust Co.*, 263 N. Y. 369.) The right of the creditors to payment became vested in 1931 under the judgment of the Court of Appeals. That right cannot be divested by the subsequent recognition of Soviet Russia. (*Matter of People* [*Russian Reinsurance Co.*], 255 N. Y. 415; *Matter of People* [*Northern Ins. Co.*], 255 N. Y. 433; *Matter of First Russian Ins. Co.* [*Samuelson*], 255 N. Y. 428; *Lehigh Valley R. R. Co.* v. *State of Russia*, 21 Fed. Rep. [2d] 396; 275 U. S. 571; *Guaranty Trust Co.* v. *United States*, 304 U. S. 126.) As against the creditors-respondents the United States acquired no title to the surplus funds under its assignment from the Soviet government. (*Matter of People* [*Norske Lloyd Ins. Co.*], 242 N. Y. 148; *Matter of People* [*City Equitable Fire Ins. Co.*], 238 N. Y. 147; *United States* v. *Bank of New York & Trust Co.*, 296 U. S. 463.) A foreign trustee or liquidator takes title subject to the claims of local creditors. (*Clark* v. *Williard*, 292 U. S. 112; *Barth* v. *Backus*, 140 N. Y. 230; *Matter of Waite*, 99 N. Y. 433; *James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248.) It is immaterial whether the local creditors are citizens of the State of the forum or are citizens of other States or friendly powers. (*Hibernia Nat. Bank* v. *Lacombe*, 84 N. Y. 367; *Barth* v. *Backus*, 140 N. Y. 230; *James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248; *United States* v. *Belmont*, 301 U. S. 324; *Russian Volunteer Fleet* v. *United States*, 282 U. S. 481.)

*Samson Selig, Abraham J. Multer* and *William F. Roche* for John S. Sawyer et al., respondents. The insurance

company itself never had more than a reversionary interest in the fund. It is now *res adjudicata* that such interest has been extinguished. (*United States* v. *Buford*, 3 Pet. 12; *United States* v. *Bank of New York & Trust Co.*, 72 Fed. Rep. [2d] 876; 296 U. S. 463; *State of Russia* v. *National City Bank*, 69 Fed. Rep. [2d] 44.) Confiscation is not liquidation. (*Relfe* v. *Rundle*, 103 U. S. 222; *Martyne* v. *American Union Fire Ins. Co.*, 216 N. Y. 183; *Cole* v. *Cunningham*, 133 U. S. 107; *Matter of Waite*, 99 N. Y. 433; *Assets Realization Co.* v. *Howard*, 127 N. Y. Supp. 798; *Wyman* v. *Wallace*, 201 U. S. 230; *Lafayette Trust Co.* v. *Beggs*, 213 N. Y. 280; *Matter of Silkman*, 121 App. Div. 202; *James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248; *United States* v. *Bank of New York & Trust Co.*, 296 U. S. 463; *Russian Volunteer Fleet* v. *United States*, 282 U. S. 481; *Yick Wo* v. *Hopkins*, 118 U. S. 356.) The Soviet government did not intend the confiscatory decree of 1918 to apply to property situate outside of Russia. (*Eastern Building & Loan Assn.* v. *Williamson*, 189 U. S. 122; *The Jupiter*, P. [1927] 120, Court of Appeals, P. [1927] 250; *Matter of Russian Bank for Foreign Trade*, Ch. Dec. [1933] 745.)

*Thomas Kiernan* for Olga I. Hoppe, respondent. It is against the public policy of the United States to recognize and enforce against American citizens a title based upon foreign confiscatory legislation. (*United States* v. *Percheman*, 7 Pet. 51; *Curran* v. *Arkansas*, 15 How. 304; *Bacon* v. *Robertson*, 18 How. 480; *Farrington* v. *Tennessee*, 95 U. S. 679; *Greenwood* v. *Union Freight Co.*, 105 U. S. 13; *Stearns Coal & Lumber Co.* v. *Van Winkle*, 221 Fed. Rep. 590; *Second Russian Ins. Co.* v. *Miller*, 268 U. S. 552.) The same policy has been adopted by the courts of the State of New York. (*Vladikavkazsky Ry. Co.* v. *New York Trust Co.*, 263 N. Y. 369).

*Victor R. Kaufman* for Thomas I. Sheridan et al., as receivers of Volga Kama Commercial Bank, et al., *amici curiæ*. Extraterritorial effect cannot be given to confisca-

tory decrees which are contrary to our public policy and shocking to our sense of justice and equity. (*Vladikavkazsky Ry. Co.* v. *New York Trust Co.*, 263 N. Y. 369; *James & Co.* v. *Rossia Insurance Co.*, 247 N. Y. 262; *Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23; *Matter of People [Russian Reinsurance Co.]*, 255 N. Y. 415; *Sokoloff* v. *National City Bank*, 239 N. Y. 158; *James & Co.* v. *Second Russian Ins. Co.*, 239 N. Y. 248; *Dougherty* v. *Equitable Life Assur. Soc.*, 266 N. Y. 71; *United States* v. *Bank of New York & Trust Co.*, 10 Fed. Supp. 269; 77 Fed. Rep. [2d] 866; *Lehigh Valley Ry. Co.* v. *State of Russia*, 21 Fed. Rep. 2d] 396; *United States* v. *Belmont*, 85 Fed. Rep. [2d] 542.)

*Allen W. Dulles* for Association of American Creditors of Russia, *amicus curiæ*.

LEHMAN, J. Moscow Fire Insurance Company was organized in 1858 as a joint stock fire insurance company under the laws of the Russian Imperial Government. In 1899 it was authorized to transact business in this State in accordance with the provisions of section 27 of the Insurance Law (Cons. Laws, ch. 28). That section provides that " no insurance corporation organized and existing under the government or laws of any state or country outside of the United States " shall transact business here unless it " shall have securities or other property within the United States, deposited with insurance departments or state officers and held in trust by a trustee or trustees, as hereinafter provided, for the protection of all its policy holders and creditors within the United States   *   *   *." The statute fixes the amount of the securities or other property which must be so deposited or held in trust and further provides that " for all purposes specified in this chapter, the capital of such a foreign insurance corporation *   *   *   shall be the aggregate value of all securities and other property   *   *   *   deposited with insurance departments or state officers and held in trust by a trustee or trustees.   *   *   *." Moscow Fire Insurance Company complied with all the requirements of the statute and

through its branch here transacted insurance business in this State under the supervision of the Superintendent of Insurance. In 1918 when the Soviet government, officially described as the Russian Socialist Federated Republic, successfully seized ruling power in Russia, the company had here large capital and its business was prosperous.

In December, 1918, the Soviet government promulgated a decree " declaring all kinds of insurance a state monopoly * * *. All private insurance companies were to be subject to liquidation and became state property." (*Dougherty* v. *Equitable Life Assur. Society,* 266 N. Y. 71, 82.) Other decrees followed by which the existence of all insurance companies *in Russia* was terminated, their assets *in Russia* seized, and their business *in Russia* became part of a government monopoly. Until 1933 the government of the United States did not accord recognition to the Soviet Republic. The decrees of the Soviet government were completely effective in Russia, but until recognition the decrees of the government could not be given here the force and effect of mandates of a lawful sovereign. Insurance corporations, organized under the laws of a Russian government which had ceased to exist, continued to transact business here through local agents with local capital, in accordance with the statutes of this State, though, as we have said in other cases, at their own domicile their existence was terminated and their property confiscated by decree of a " governmental establishment which actually governs; which is able to enforce its claims by military force and is obeyed by the people over whom it rules." (*Russian Reinsurance Co.* v. *Stoddard,* 240 N. Y. 149, 158.) Such a corporation was actually and effectively dead in Russia. It was legally dead in countries where the Soviet Republic was recognized, and since recognition " is retroactive in effect and validates all the actions and conduct of the government so recognized from the commencement of its existence " (*Oetjen* v. *Central Leather Co.,* 246 U. S. 297, 303), belated recognition by the United States might change retroactively a being endowed with life into a corpse. The result is a tangle of juristic

rights and obligations which cannot be unravelled by strict logical application of juristic concepts. As we pointed out in *Russian Reinsurance Co.* v. *Stoddard* (*supra*, pp. 162, 163), " the situation is not only without precedent but anomalous " and " there can be no true precedent in the books, when the facts are unprecedented."

In spite of the fact that the existence of Moscow Fire Insurance Company was, in 1918, terminated in Russia, its home, by decree of the Soviet Republic, it continued to transact business here until 1925 through its local or United States branch. Then by order of the Supreme Court of this State the Superintendent of Insurance took possession as liquidator of the assets of that branch (constituting the capital of the United States branch), pursuant to the provisions of section 63 (since repealed, see now § 400 *et seq.*) of the Insurance Law. These assets consisted of securities deposited with the Insurance Department or held in trust for the policyholders and creditors of the company within the United States, as required by the statute. After the Superintendent of Insurance had paid the domestic policyholders and creditors and also the creditors, whether foreign or domestic, who acquired liens by attachment before liquidation was begun, the Superintendent still had in his possession assets of great value. In *Matter of People* (*Russian Reinsurance Co.*) (255 N. Y. 415) the problem of the disposition that should be made of such surplus assets was presented.

Ordinarily any surplus, remaining after the domestic creditors and policyholders of a foreign insurance company doing business here were paid, would be transmitted to the foreign corporation at its domicile or to the domiciliary liquidator or administrator, if the foreign corporation was in liquidation. (*Matter of People* [*Norske Lloyd Ins. Co.*], 242 N. Y. 148.) The decrees of nationalization and confiscation by the unrecognized governmental establishment then ruling in Russia made that course impossible. (Cf. *James & Co.* v. *Rossia Ins. Co.*, 247 N. Y. 262.) Alternative courses were urged upon us. The assets of the

United States branch which had been taken over by the Superintendent of Insurance under authority of the State might be left in his custody until " a government in Russia is recognized by the United States or until the surplus funds may be transmitted to a liquidator or legal representative of the corporation at the domicile abroad (*i. e.,* in Russia) or in accordance with any provision of a treaty of the United States; " or the court might, in the exercise of its broad powers, provide, in the extraordinary condition then prevailing, an extraordinary method of administering and distributing the assets then in the control and custody of the State. The court chose the latter course. (*Matter of People* [*Russian Reinsurance Co.*], *supra*, p. 421.)

In that case we pointed out that " in the silence of the statute, a decree instructing the liquidator as to the administration of the surplus must conform to the exactions of equity and justice." Though " the Superintendent of Insurance has fulfilled the statutory trust when he has paid the domestic creditors * * * for whom the trust was laid upon him," yet, so we said " the surplus must be made available for the payment of creditors and policy holders with claims founded upon foreign business " and any remainder distributed to those entitled to it, where possible through directors of the corporation. " The present state of the law in respect of these Russian corporations driven from their domicile and there subjected to decrees of confiscation and extinction has been expounded with a full review of the decisions in a recent judgment of this court (*Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23; cf. *Severnoe Securities Corp.* v. *London & Lancashire Ins. Co.*, 255 N. Y. 120). The ruling was that they were still juristic persons, and that their boards of directors, represented by a quorum, were still competent to act. The doctrine of that decision controls the case at hand " (pp. 422, 423, 425).

Accordingly the Superintendent of Insurance was directed to pay " to the corporations, represented by directors, a quorum of the board " (p. 424), the surplus remaining after

domestic policyholders and creditors had been paid and provision made for vigilant foreign creditors. Moscow Fire Insurance Company was no longer represented by directors, a quorum of the board. It had been left with but one director. He might be treated, so we said, as a conservator, but delivery to conservators was to be conditioned upon the execution of a surety company bond that they would faithfully apply the assets to the use of the corporation, its creditors and shareholders; or, in the event of failure to comply with the condition, the assets might be deposited with a trust company " as agent or depositary upon the stipulation of the insurance company and its conservators that the fund will not be withdrawn except upon the order of a court of competent jurisdiction." (*Matter of People* [*Moscow Fire Ins. Co.*], 255 N. Y. 433, 435.)

The assets of the company were deposited on April 18, 1933, with the Bank of New York and Trust Company as agent or depositary of Moscow Fire Insurance Company and of its sole surviving director and conservator, upon a stipulation that they would not be withdrawn except upon the order of a court of competent jurisdiction. Immediately suits were brought in the Supreme Court of the State to determine the disposition of these assets. These suits were consolidated and referred to a referee to hear and determine. While the issues were pending and undetermined, the United States government on November 16, 1933, recognized the Soviet government and by that act of recognition every decree made by the Soviet government from the time it was established was retroactively given the force and effect which must be accorded to the lawful decrees of a legitimate sovereign. Included were the decrees of 1919 and 1920 by which insurance in Russia became a State monopoly; the existence of private insurance companies terminated and their property appropriated. The Soviet government has not itself taken steps to enforce claims against American nationals. All such claims were assigned to the United States government. (Cf. *United States* v. *Belmont*, 301 U. S. 324.) Asserting its rights under that assignment,

the United States has made claim to all the assets of the Moscow Fire Insurance Company which were deposited with the trust company awaiting the order of a court of competent jurisdiction of this State.

Assignment of the claim of the Soviet government to the United States did not divest the State court of its control of the fund which was deposited with the trust company pursuant to order of the court and which remained subject to its order. The courts of this State continued to exercise exclusive jurisdiction over that fund in the action, then pending, to determine how the fund should be distributed. An independent action brought by the United States in a Federal court against the depositary of the fund was dismissed for that reason, and the United States was relegated, for assertion of its claim, to the " appropriate forum where the funds are held." ( *United States* v. *Bank of New York & Trust Co.*, 296 U. S. 463, 481.) Then the United States intervened in this action and now appeals from a judgment on the merits dismissing its claim.

The rights of the United States are derived solely from the assignment by the Soviet government of its claims against nationals of the United States. The claims of the Soviet government for the moneys or property, in this country, of Moscow Fire Insurance Company are based solely on its decrees of nationalization of insurance companies and of seizure of their assets. The United States asserts here title to property of a branch in this State of a Russian insurance corporation which it is said was transferred, by force of these decrees, from the insurance corporation to the Russian government. Two questions arise : *first*, whether the Russian decrees were intended to have such effect, and, *second*, whether even if so intended the courts of this State will give them their intended effect.

In considering those questions, some general principles must be accepted as established premises. They are to be found expressed or implicit in the prevailing opinion of this court in *Dougherty* v. *Equitable Life Assurance Society* (266 N. Y. 71) and in the opinions of the Supreme Court of the

United States in *United States* v. *Belmont* (301 U. S. 324) and *Guaranty Trust Co.* v. *United States* (304 U. S. 126). Recognition of the Russian government has given to its decrees retroactively the force and effect of foreign law. " The government of Russia is in all respects to be treated as any other power in Europe. * * * Soviet Russia * * * stands in the same position as if the government of Russia had never been interrupted by revolution; its decrees have the same force and effect as if they had been issued by the Imperial government." (Per CRANE, J., in *Dougherty* v. *Equitable Life Assurance Society, supra*, p. 84.) The question then of the construction of the Soviet decrees is a question of the law of Russia to be determined, like other questions of foreign law, upon the testimony of expert witnesses, decisions of the foreign courts or officers authorized to promulgate or authoritatively construe the foreign law, and upon the relevant documents. The question of the *effect* to be given to the foreign law within this State by the courts of this State must be determined in accordance with the law of this State. Recognized principles of comity and international law or the control of international relations intrusted under the Constitution to the Federal government are factors which at times dictate the content of the law of the State in such matters, but foreign law is of effect here only in so far as the local law gives it effect. It is the established law prevailing in every State under the Constitution of the United States that " the courts of one will not sit in judgment upon the acts of the government of another, done within its own territory," and that " within the field of its powers, whatever the United States rightfully undertakes, it necessarily has warrant to consummate. And when judicial authority is invoked in aid of such consummation, state constitutions, state laws, and state policies are irrelevant to the inquiry and decision." ( *United States* v. *Belmont*, 301 U. S. 324, 327, 331.) Outside of that field the State determines its own public policy and embodies it in its own law.

Accepting these principles as established now beyond challenge, we apply them to the facts in this case. At the risk of repetition, perhaps needless, we emphasize here that the United States is claiming only as assignee of the Soviet government in the assertion of rights which have no other basis than the Soviet nationalization and confiscation decrees. " There is nothing * * * to suggest that the United States was to acquire or exert any greater rights than its transferor or that the President by mere executive action purported or intended to alter or diminish the rights of the debtor with respect to any assigned claims, or that the United States * * * is to do more than the Soviet government could have done after diplomatic recognition — that is, collect the claims in conformity to local law. Even the language of a treaty wherever reasonably possible will be construed so as not to override state laws or to impair rights arising under them." (*Guaranty Trust Co.* v. *United States*, 304 U. S. 126, 143.) The United States has not invoked the judicial authority of the States in aid of an agreement it has consummated, calculated to give the decrees of the Soviet government force beyond the force given to decrees of other recognized governments. It invokes the aid of the court only to enforce rights of the Soviet government, whatever they might be, which the United States has acquired by assignment, to property within this State and subject to the law of the State.

Before recognition, while the courts of this country were not yet subject to the rule imposed by comity between independent sovereign States that " the courts of one [country] will not sit in judgment upon the acts of * * * another, done within its own territory," there was reluctance, rooted in our age-old common law traditions of ordered liberty, to assume that decrees of the Soviet government which confiscated property without compensation or otherwise exceeded the powers which, in accord with common law principles and traditions, a sovereign might *properly* exercise, should, after recognition, be treated in full sense as " law " even within Russia. Whether doubts, then expressed, or

limitations, suggested in advance, upon the effect which the courts here would give to such decrees of the Soviet, were well founded, need not now be considered. After recognition, the court, in *Dougherty* v. *Equitable Life Assurance Society* (*supra*), held that *wherever Russian law governs* the rights and obligations of insurance companies, there the courts of this State will give full effect to the decrees of monopolization and nationalization of insurance and insurance companies in Russia. It applied the rules of Russian law in the performance of obligations owed to persons not citizens of the United States by a Russian corporation under a contract made in Russia, to be performed primarily in Russia and by agreement of the parties to be governed by the law of Russia. The opinion indicated in clearest language that what was there said and decided was limited to rights " *dependent upon the law of Russia,*" analogous to " right to tangible property in Russia or the possession thereof " (p. 88). Nothing said indicates that rights to property in New York belonging to the United States branch of a Russian insurance company *are* dependent upon the law of Russia as formulated in the Soviet decrees. That is the problem presented here.

The United States relies primarily upon three decrees. They are described in the findings of the referee as follows:

" 88. The decree of November 18, 1919 on the annulment of life insurance contracts abolished insurance of life in all its forms in the Republic and annulled all contracts with insurance companies and savings banks with respect to the insurance of life, capital and income.

" 89. The decree of the Soviet of People's Commissars dated March 4, 1919, on the liquidation of obligations of State enterprises, provided that stock certificates and shares of joint stock companies, whose enterprises have been either nationalized or sequestered, are annulled and also provided that such enterprises are free from the payment of all debts to private persons and enterprises which have arisen prior to the nationalization of these enterprises, including payments on bond loans with the exception only of wages due to workers and employees.

" 90. The decree of the Soviet of People's Commissars dated June 28, 1918 provides in Article I that the commercial and industrial enterprises enumerated therein, which are located within the boundaries of the Soviet Republic, together with all their capital and property, regardless of what the latter may consist, are declared the property of the Republic."

The opinion of an expert witness on the law of Soviet Russia and interpretative decrees or declarations of Soviet boards or officers, supports the contention of the United States that these decrees were intended to apply to the business of Russian insurance companies not only inside Russia but also without Russia, and to transfer to the Russian government all the property of the insurance companies as the " indivisible property of the indivisible juristic persons." In spite of such testimony the referee has found that the decrees were not intended to apply to the property in this State of the United States branch of Moscow Fire Insurance Company.

Opinions of expert witnesses will not control the judgment of a judge in regard to foreign law " except to the extent that it is a reasonable inference from statute or from precedent or from the implications of a legal concept, such as contract or testament or juristic personality. [Citing cases.] Unless it is this, the judge must use his own judgment and find the meaning of the foreign law as he would if the meaning to be ascertained were that of a deed or an agreement. This is as true upon appeal as it is upon a trial. At such times and for such inquiries, opinion has a significance proportioned to the sources that sustain it." (*Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23, 34, opinion by CARDOZO, Ch. J., cited with approval in *Dougherty* v. *Equitable Life Assurance Society, supra.*) Tested by that standard, the findings of the referee are fully sustained by the evidence even though no expert witness was produced by the respondents to guide the judgment of the referee.

In a long series of decisions the courts of England have held that decrees by the Soviet government nationalizing

the business of banking or insurance, canceling obligations of banking and insurance companies and confiscating their property were not *intended* to apply to property of the companies with situs outside of Russia, or to obligations to be performed outside of Russia. (*Matter of Russian Bank for Foreign Trade*, [1933] Ch. Div. 745; *Russian Commercial & Industrial Bank* v. *Comptoir d'Escompte de Mulhouse*, [1925] App. Cas. 112; *First Russian Ins. Co.* v. *London & Lancashire Ins. Co.*, [1928] Ch. Div. 922; *Luther* v. *Sagor & Co.*, [1921] 3 K. B. 532.) Even if so intended they would not in England be given such effect though the Soviet government was recognized and its decrees were part of the law of Russia. (*Sedgwick, Collins & Co.* v. *Russia Ins. Co. of Petrograd*, [1926] 1 K. B. 1; *Employers' Liability Assur. Corp.* v. *Sedgwick, Collins & Co.*, [1927] App. Cas. 95.) It is pointed out in the opinion in *Matter of Russian Bank for Foreign Trade* (*supra*) that the Russian Soviet government in 1922 and 1923 in official circulars and regulations itself gave similar interpretation to such decrees. It also appears from the same opinion in the English case that the courts of France gave similar limited extraterritorial effect to such decrees.

There is no need here to consider whether *in general* Soviet confiscatory decrees are intended to apply to property with situs in this State, or whether, if so intended, the courts of this State would give the decrees such effect. Such questions are left open by the opinion in *Dougherty* v. *Equitable Life Assurance Society* (*supra*), and the doubts there expressed or implied are not to be either confirmed or removed until the questions are more clearly presented. We deal here with a class of property and a juristic person *sui generis*. Certainly no decree monopolizing the business of insurance in Russia; taking over the conduct of the insurance business formerly conducted in Russia by insurance corporations, and terminating the obligations of such companies could possibly have been intended to apply to business conducted here, or if so intended, could be binding here. This State by its own laws determines what organi-

zations shall be permitted to conduct the business of insurance here, what capital or security shall be required and in other respects how such business shall be conducted. Certainly no foreign government may decree that it will take over the business here conducted by a corporation approved by this State, and cancel or change obligations to be performed here by such corporations.

No contention so opposed both to common sense and generally accepted juristic concepts is strongly urged here; but we are told that after capital of the corporation here has been applied in satisfaction of claims of creditors and policyholders here, the decrees do operate to confiscate and transfer to the government the surplus capital. There is nothing in the decrees to indicate that though the Russian government could not take unto itself the business of insurance conducted by Russian corporations here, yet the Russian Soviet government did intend to take unto itself the property of the company here. The property which the United States government claims is what remains of the capital which this State required the insurance company to deposit here with the Insurance Department or with trustees. It is the property which at all times has been within the State of New York. As the referee has found, it " has always been held by and the legal title thereto vested in trustees resident in and citizens of the United States." It has always been subject to the control of the Insurance Department and in a practical sense has always been in the custody of the State. At no time could the insurance company or the Russian government have transferred it to Russia. In strongest sense its situs was in this State, and the control of this State complete. No juristic fiction that the situs of intangible property is the domicile of the owner could overthrow those facts. Over such property it is clear that the Russian government, either Imperial or Soviet, had no power of control, and as the referee properly found, asserted no power of control. In *Dougherty* v. *Equitable Life Assurance Society* (*supra*) the court, as we have said, was dealing with obligations dependent upon Russian law. In *United*

*States* v. *Belmont* (*supra*) the court was considering the sufficiency of pleadings which conclusively established that the United States was asserting, under assignment from the Soviet government, a claim to *intangible* property here of a Russian corporation which under Soviet decree had been confiscated by the government. (See opinion of Circuit Court of Appeals, 85 Fed. Rep. [2d] 542.) The allegations in the complaint that under the decree the property of the corporation was confiscated by the Russian government and then transferred to the American government was admitted by demurrer, and as the court pointed out, were not open to challenge. Such cases in no wise support the appellant's contention here, where we are considering whether title to property in the custody of this State has been transferred *in invitum* from its owner to the Soviet government or is " dependent " upon the law of Russia.

Even if, as the expert witness testified, the decrees were intended to apply to the " indivisible " property of the " indivisible juristic persons," the property of the United States branch of a Russian insurance company must fall outside the scope of a decree so defined. The Insurance Law requires that before a foreign insurance corporation is permitted to do business here there must be a definite separation and division of its property and even of its juristic personality. " The Insurance Law as now written and as an entirety indicates a purpose and policy in dealing with foreign insurance companies doing business in this country which are so definite and plain that they fix upon the words under consideration an interpretation which cannot fairly be avoided. We think that the Legislature in allowing these foreign companies to do business in this State and country intended to treat the domestic agency largely as a *complete and separate organization*, to place it on a parity with domestic corporations, to supervise and regulate it as such and to require it by the deposit of prescribed assets *to set up within this country a capital corresponding to that of domestic corporations* and which should be security for business transacted by it here and not elsewhere." (*Matter of*

*People* [*Norske Lloyd Ins. Co.*], 242 N. Y. 148, 158.) (Italics are new.) Thus the property of the United States branch of a foreign insurance company acquires a character of its own. That character is " dependent " upon the law of this State. The property from its nature is subject to the laws of this State, and both the property and " the complete and separate organization " analogous to a domestic corporation are immune from the control of any foreign power. No rule of comity and no act of the United States government constrains this State to abandon any part of its control or to share it with a foreign State. The findings or conclusions of the courts below that the decrees of nationalization of insurance were not intended to have effect here and that title to and right to possession of the capital of the United States branch of the insurance company is dependent upon the law of this State, rest upon a firm foundation.

Difficulty still remains, however, in determining the persons or corporations who may share, under the *law of this State*, in the distribution of the assets of the United States branch of Moscow Fire Insurance Company, regarded as a " complete and separate organization " created and regulated by the law of this State. Upon liquidation that separate organization ceased to exist and the parent corporation was not authorized to transact business here. When those who had done business with the United States branch as a separate and complete organization had been paid out of its capital here there was no longer any reason why the State, acting through the Superintendent of Insurance, should retain its control or custody of the assets here. The parent corporation at its domicile or a domiciliary administrator of the corporation would ordinarily be entitled to its property, and creditors or stockholders might, in accordance with the law of the domicile, present their claims there. Though the Soviet decrees upon which the appellant relies have no extraterritorial effect upon property or corporate branch located here, in Russia the decrees have effected the death of the parent company. (*Lazard Bros. & Co.* v. *Midland Bank, Ltd.*, [1933] App.

Cas. 289.) The corporation cannot make any claim for itself or for its stockholders or its unpaid creditors residing in Russia or elsewhere than in the United States, and there is no domiciliary administrator who might distribute the assets among such creditors or stockholders. That is why this court has ordered distribution here. Except for the belated claim asserted by the United States after it recognized the Soviet government, upon the death of the parent corporation, property of its branch would now be distributed here among stockholders and creditors in accordance with the judgment entered upon the report of the referee. Has the United States by assignment from the Soviet government acquired a claim superior to these foreign creditors or stockholders?

It was said by Viscount CAVE in *Russian Commercial & Industrial Bank* v. *Comptoir d'Escompte de Mulhouse (supra)* that " it is not an agreeable task for a British Court of Justice to consider the effect of a series of decrees and orders providing for the compulsory acquisition by a foreign State of the assets of private persons ' on the basis of complete confiscation ' " (p. 123). It is no more agreeable to an American court which administers law based on the same principles and traditions of the common law. None the less the courts of both countries have, after recognition of the Soviet Republic, given to such decrees the force and effect to which they are entitled as part of the law of Russia. But no principle or authority has been cited which should constrain or, perhaps it should be said, would justify the courts of New York in abandoning control of property situated here in the custody of this State, or in subjecting to Russian law rights to such property which are governed by the law of this jurisdiction. Though we may not " sit in judgment upon the acts of the government of another done within its own territory; " though this State may not choose between different policies where no choice is left open to us under established rules of law, yet where there is room for choice we are guided by common law principles and traditions embodied in our Constitution, statutes and

judicial decisions. To meet conditions for which there was no precedent and for which no provision was made in the statute, this court, as we have said, devised an extraordinary method of administering and distributing the assets in the possession of the State, which we hoped would " conform to the exactions of justice and equity." We have invited creditors and stockholders to prove their claims, and now we are told that the method which in 1931 conformed to the exactions of justice and equity must be rejected because retroactively it has become unlawful; that the suitors who at our invitation have come into court must be dismissed empty-handed; that we must remit the assets in our control to another sovereign to retain or distribute as it sees fit. No principle of law constrains us to do that.

Juridical concepts may be important factors in determining legal rights and obligations when concepts and obligation are parts of a consistent system of jurisprudence. The corporate " fiction " of a single artificial juristic person cannot be applied with unrelenting logic where one sovereign endows the corporation with life and another sovereign permits a branch of the corporation to do business only as a " complete and separate organization." Theories underlying our concept of private property and private rights and obligations are of doubtful validity when, attempting to reconcile what is basically inconsistent, the courts must determine the effect, upon private rights in property situated here, of decrees which elsewhere have destroyed private rights of property and contracts. Perhaps argument might be made that the claims of all persons not our own nationals and not arising through transactions with the United States branch of a Russian insurance company, though under our law untouched by the Soviet decrees until the United States recognized the Soviet government, are under our law retroactively destroyed by such decrees after recognition. No such question is before us. The United States can challenge the claims of those to whom the property has been awarded only if it has a valid claim

to the property of the insurance company in the United States. We review the validity of the claim of the United States; defects in the claim of others would not cure invalidity there.

Because the legal title and right of control of the property which the United States is claiming as assignee of the Soviet Republic has at all times been in the State or in a trustee subject to the direction of the State, its situs was here and it has been subject exclusively to the laws of the State. Because the United States branch has been under the law of this State a " complete and separate organization " and its assets have constituted " a capital corresponding to that of domestic corporations," the Soviet government's decrees did not automatically terminate the existence of the United States branch or alter the right of the State to control and administer the property according to its own law. At least until recognition of the Soviet government the right of this State to liquidate the capital of the United States branches of Russian insurance companies according to New York law, and to distribute the assets among those who under New York law were its creditors or stockholders, was not open to challenge. The Supreme Court of this State had taken the property into its own custody to make such distribution long before recognition. It had invited claimants to prove their claims. After recognition, the courts of this State were bound to take notice that the parent corporation was legally dead. They had already taken notice that the parent corporation could no longer function. The proceeding for distribution proceeded as before. The law of its domicile ordinarily determines the manner in which property of a corporation is to be distributed, but that rule does not apply invariably. The incidents of ownership of property, especially immovable property, are dependent upon the law of their situs. The property claimed here was in all respects subject to the law of this State. Though the courts of this State are bound to give effect to the decrees of the Soviet government in so far as these decrees terminated the existence of the company in Russia, they might still proceed with the liquidation of

the property in their custody here, treating the United States branch, the creation of the Insurance Law, as a complete and separate organization, as such branches had always for many purposes been treated. As long as the parent company existed it would under the law of this State have certain residual rights in the property of the branch after the branch was liquidated. Those rights arose out of the relationship of parent corporation and branch. The extinction of the parent company by the decrees of the Soviet government has eliminated the parent company and destroyed that relationship. A new situation has arisen which must be met in accordance with the law of this State. The courts, giving effect as they must to the extinction of the parent company, must determine whether the parent company's residual right to property here passes by confiscatory decree to the sovereign who extinguished the parent corporation or whether under the law of this State such rights have passed to the stockholders and foreign creditors who, in answer to an invitation extended to them by this State, have come in and proven their claims in accordance with a procedure devised by this court to " conform to justice and equity " as those terms are understood here. The courts below have made the proper choice, not because enforcement of confiscatory decrees of property situated elsewhere is contrary to our public policy, but because under the law of this State such confiscatory decrees do not affect the property claimed here.

The judgment should be affirmed, with costs.

RIPPEY, J. (dissenting). On March 16, 1917, the Imperial government of Russia was overthrown. On that date the Provisional government of Russia was set up and on March 22, 1917, the Provisional government of Russia was recognized by the United States. On July fifth of that year Boris Bakhmeteff was recognized by the President of the United States as the Ambassador from the Provisional Government and Serge Ughet as financial attache of the Russian Embassy in the United States. The Union of Soviet Socialist Republics, known and referred to as the

Soviet government, superseded the Provisional government on November 7, 1917. Thereupon the Soviet government dismissed Bakhmeteff as Ambassador, but the United States continued to recognize him to June 30, 1922, and the financial attache down to November 16, 1933. To recover any property of the Imperial, Provisional or Soviet governments held in our country by our nationals, his status was such that he might have brought suit at any time after July 5, 1917, and prior to November 16, 1933 (*Guaranty Trust Co.* v. *United States*, 304 U. S. 126). Full recognition was granted by the United States government to the Soviet government on November 16, 1933, and, by that act, every act of the Soviet government prior to recognition was validated (*United States* v. *Belmont*, 301 U. S. 324). Recognition being an accomplished fact, every pertinent act of the Soviet government from the beginning must be given full force (*Dougherty* v. *Equitable Life Assur. Society*, 266 N. Y. 71).

Decrees, laws, enactments and orders of the Soviet government, promulgated during the years 1918 and 1919, expressly or by implication, both as matter of fact and matter of law, and as understood and construed by that government, (1) nationalized and monopolized the business of insurance in all its forms whereby all Russian insurance companies were dissolved, terminated and liquidated, and their assets, including the assets of all their branches and subsidiaries, in whatever form and wherever located and in whatever manner and wherever held, were confiscated and forthwith became the property of the Soviet government, (2) repudiated, canceled, annulled and discharged all debts of those companies, their branches and subsidiaries, to whomsoever and wherever owing, (3) extinguished all rights of their shareholders, and (4) discharged all obligations and liabilities of the companies. The result was that the Soviet government became the owner and entitled to the immediate possession of all property of the nationalized companies and of their branches and subsidiaries, wherever physically located, as of the date of nationalization. The

property of the Moscow Fire Insurance Company, of Moscow, Russia, wherever physically situate, with all its subsequent accretions, then became the property of the Soviet government, free from all claims of creditors, policy-holders or stockholders, except as nationals of the country where such property was physically located might be permitted by the public policy of that country or by its own and international law to assert their claims. Such conclusions, it seems to me, are unassailable, both in fact and in law, as I shall presently more fully point out. International comity and expediency bar assertion to the contrary in any court of the United States (*United States* v. *Manhattan Co.*, 276 N. Y. 396; *United States* v. *Belmont, supra; Shapleigh* v. *Mier*, 299 U. S. 468, 471).

The Moscow Fire Insurance Company, of Moscow, Russia, was organized under the laws of the Empire of Russia in 1858 and was admitted to do business within the State of New York in 1899. It organized a United States branch and deposited from its own property in Russia (not originating from contributors or shareholders within the United States) security expressly for the protection only of domestic creditors and policyholders as required by section 27 of the Insurance Law (Cons. Laws, ch. 28) of the State of New York. That deposit remained the property of the parent company, subject only to the claims of domestic creditors (*Matter of People [Norske Lloyd Ins. Co.]*, 242 N. Y. 148). Thereupon the Superintendent of Insurance issued a license to the branch to transact business here. Upon keeping the deposit good the license was renewed from year to year thereafter until 1925. On August 8, 1925, pursuant to the provisions of the Insurance Law, the Superintendent of Insurance was appointed liquidator of the local branch. During the progress of the liquidation the claims of all domestic creditors and of all policyholders through the local branch and of all foreign creditors who had attachments when the Superintendent took possession were paid in full and the question arose as to what disposition should be made of the cash and securities,

aggregating $1,080,399.54, remaining in his possession, legal title to which was then vested in the Soviet government as the successor of the insurance company. He was finally directed to turn the money and securities over to the surviving director of the parent company and/or to the Bank of New York and Trust Company *as depositary* subject to the order of a court of competent jurisdiction (255 N. Y. 433; 262 N. Y. 453; cf. *United States* v. *Manhattan Co., supra,* p. 4G1), which he did on April 18, 1933. Thereupon these actions were commenced by creditors and by stockholders of the parent company, none of whom were our nationals. After consolidation of the actions and trial of the issues therein raised, a judgment of distribution was entered by the Supreme Court on August 18, 1934, and subsequently affirmed by the Appellate Division.

The record in that proceeding establishes that the claimants to whom distribution was directed to be made (with the possible exception of three) were all variously residents and citizens of Latvia, Norway, Sweden, Russia, Esthonia, Poland, Germany and France, having claims arising variously out of agency contracts and insurance and reinsurance contracts written and to be performed in countries other than the United States, ownership in shares of the parent company and services rendered by attorneys and others to the parent company and to the liquidating director of the Moscow company in foreign countries. None of the claims of foreign creditors or shareholders arose out of relations with the local branch and adjudication followed our law, not Soviet law, the law of the domicile of the owner of the fund. The validity of those claims depended on the laws of the Imperial government of Russia and its successors (*Dougherty* v. *Equitable Life Assur. Society, supra; Canada Southern Ry. Co.* v. *Gebhard,* 109 U. S. 527, 537), or upon the laws of the countries of the citizenship of the claimants or where the claims arose (*Severnoe Securities Corp.* v. *L. & L. Ins. Co.,* 255 N. Y. 120). Said the Supreme Court in the *Gebhard* case (*supra*): "Such being the law, it follows that every person who deals with a foreign

corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes. To all intents and purposes, he submits his contract with the corporation to such a policy of the foreign government, and whatever is done by that government in furtherance of that policy which binds those in like situation with himself, who are subjects of the government, in respect to the operation and effect of their contracts with the corporation, will necessarily bind him. He is conclusively presumed to have contracted with a view to such laws of that government, because the corporation must of necessity be controlled by them, and it has no power to contract with a view to any other laws with which they are not in entire harmony. *It follows, therefore, that anything done at the legal home of the corporation, under the authority of such laws, which discharges it from liability there, discharges it everywhere.*" (Emphasis mine.)

The Moscow Fire Insurance Company existed " only under the express law of the state or sovereignty by which it was created. Its dissolution puts an end to its existence, the result of which may be likened to the death of a natural person " (*Chicago Title & Trust Co* v. *Wilcox Bldg. Corp.*, 302 U. S. 120, 124). As the corporation went, so went its local branch. Though dead, the parent survived, this court has held, as to its property in this State in the sense that its surviving director might possess its assets with situs here, after satisfaction of the claims of our nationals (255 N. Y. 433).

No amount of argument can change the fact that there is no foundation in our statute law, in the decisions of our courts, in reason, logic or elsewhere for the assertion that the branch of a foreign corporation is a juristic, legal or factual entity, separate and distinct from the parent company, or that it may be placed in the same position as a domestic corporation as to rights and obligations and capable independently to perform corporate functions. The con-

trary has been held in this State as a necessary basis for the decision in *James & Co.* v. *Second Russian Ins. Co.* (239 N. Y. 248), in the instant case where this court ordered deposit of the fund with the surviving director of the parent company (255 N. Y. 433), and in other cases involving Russian corporations where similar orders and decisions were made. Nothing to the contrary was held by this court in *Matter of People* (*Norske Lloyd Ins. Co.*) (242 N. Y. 148, 159). No such broad rule as is claimed here was there laid down nor was there occasion for it. Whatever was said there was limited to the question as to whether assets of an insolvent foreign insurance company located in this country should be applied, if necessary, to satisfaction of claims of policyholders who were residents of the United States, not alone when these policies where written here but when such policies were written abroad, and it was held that the deposit required by the statute " *should be security for business transacted by it here* and not elsewhere." (Emphasis mine.) The decision is authority for the proposition which we are now asserting that beyond our own nationals whose claims originated here or those who had liens on the fund prior to the time the Superintendent of Insurance took possesson, the control or authority of our courts is limited to turn over the surplus, under proper safeguards, to the parent corporation, its successor or its representative in the foreign jurisdiction. This rule was again definitely emphasized in *James & Co.* v. *Rossia Ins. Co* (247 N. Y. 262) and in *Matter of People* (*Norske Lloyd Ins. Co.*) (249 N. Y. 139), where the subject of interest on claims against the same company was under consideration, and Judge LEHMAN said (pp. 145, 146): " Other creditors, including American citizens, may share only in the distribution of assets of the foreign liquidators, appointed in the jurisdiction where the corporation is domiciled, to whom the Superintendent of Insurance must transmit any surplus of the funds in his charge, remaining after the payment of those creditors who are entitled to payment therefrom (*Matter of People* [*City Equitable Fire Ins. Co.*], 238

N. Y. 147)." That we may not distribute the surplus to foreign claimants in our courts, in the absence of liens or attachments by foreign claimants, was most emphatically emphasized in *Matter of People (Russian Reinsurance Co.)* (255 N. Y. 415), since there was no insolvency and the corporation, though legally dead at its domicile, was still a " juristic " person for whom its directors were empowered to act. See, also, *Matter of People (Second Russian Ins. Co.)* (256 N. Y. 177, 181), where this court, citing the case reported in 242 N. Y. 148, said: " As the claim originated in an alien country, through a contract between aliens, it was a foreign claim, not entitled to a share in the distribution made by the Superintendent of Insurance, from the funds received by him." No emergency or occasion now arises for the definition of a " branch " of a foreign company such as has been suggested. To avoid the clear meaning of the statutes and the direct, implicit and constant holdings of this court amounts to writing into the statute something that does not now exist and it is beyond our province or power to do so. The successor of the parent company could sue here, the fiscal agent of its successor, the Soviet government, to the time of the assignment could have enforced its claims (*Guaranty Trust Co. v. United States, supra*) and, though dead in its domicile, its surviving director, though an exile from Russia and a non-resident here, so this court has held, can take control of its property here, not because it belongs to its local branch as a separate domestic corporation or as a *separate entity,* but because it still belongs to the parent corporation, a " juristic " person, itself. The branch was independent of the parent company, so far as here material, only to the extent that the statute requires that our jurisdiction shall not be limited so as to hamper our courts in extending, out of its assets in this country, " the protection of all its policyholders and creditors within the United States " (Ins. Law, § 27).

There can be no question of the powers of the Soviet government to take the course it pursued or to put into

effect the result indicated, either before or after recognition by our government, within its own territory and, under Russian law, Russian creditors, policyholders and shareholders have redress only against the State. (See *Canada Southern Ry. Co.* v. *Gebhard*, 109 U. S. 527, 537.) Neither can there be any question of the necessary result of the laws, enactments and orders of the Soviet government as affecting property extraterritorially except in so far as the public policy of the place of the location of that property may interfere. By force of the Soviet law, its authority is binding in the United States (*Canada Southern Ry. Co.* v. *Gebhard, supra*). We have no domestic policy that may interfere with the effect of its nationalization and confiscation decrees on its relations with foreign creditors and shareholders or on contracts of the nationalized corporation neither made nor to be performed within this country. Wrong to the claimants, if there be any wrong, was done by the Soviet government. As to disputes between nationals of countries other than our own and a foreign country we have no concern. In *United States* v. *Diekelman* (92 U. S. 520, 524) it is said: " A citizen of one nation wronged by the conduct of another nation, must seek redress through his own government. His sovereign must assume the responsibility of presenting his claim, or it need not be considered. If this responsibility is assumed, the claim may be prosecuted as one nation proceeds against another, not by suit in the courts, as of right, but by diplomacy, or, if need be, by war. It rests with the sovereign against whom the demand is made to determine for himself what he will do in respect to it. He may pay or reject it; he may submit to arbitration, open his own courts to suit, or consent to be tried in the courts of another nation. All depends upon himself."

At the time of the diplomatic recognition by the United States of the Soviet government and as a part of the diplomatic exchange between the two governments, an assignment was made to the United States of all interest which the Soviet government had in the fund in question. *Prima*

*facie*, the United States thereby became entitled to the whole fund ( *United States* v. *Manhattan Co., supra*). In the *Belmont* case (*supra*, p. 332), in language equally applicable here, the Supreme Court said: " The substantive right to the moneys, as now disclosed, became vested in the Soviet government as the successor to the corporation; and this right that government has passed to the United States." The purpose of the documents exchanged at the time of recognition was to protect and promote the interests of the United States and of its nationals. The assignment, by its own terms, was " preparatory to a final settlement of the claims and counterclaims between the governments of the Union of Soviet Socialist Republics and the United States of America and the claims of their nationals." The assignment is broad and is conclusive on its face. If the purpose and effect of the assignment, read in the light of diplomatic exchanges and recognition of the United States, was not to transfer title to the fund in question and to all other claims against our nationals which the Soviet government might have, it was all an idle ceremony. Its validity, scope and purpose are matters with which the executive branch of our government and of the Soviet government only are concerned and may not be questioned nor its purpose frustrated by the courts ( *United States* v. *Belmont, supra*). For the purpose of our courts the Soviet government became vested with legal title to the entire fund and to all its accretions at the time of the nationalization and confiscation decrees free and clear of any claims of creditors (other than our own nationals) against the same and continued to have such interest to the time of the assignment to the United States. Nothing occurred to change the status or the title or ownership to the fund until the assignment whereby the United States succeeded to the rights of the Soviet government.

After unsuccessfully attempting to invoke the jurisdiction of the Federal courts in its effort to procure the fund, which efforts culminated at or about the date of entry of the judgment in the consolidated actions, the United States

forthwith filed a petition to intervene in the State court actions. It asserted it had a valid claim to the entire fund in the hands of the depositary as of the date of acceptance by the latter of the trust, together with all subsequent accretions. Having rightfully intervened and having duly and legally acquired title to the fund, it was entitled to have determined every question that could properly be raised and to contest the right of claimants to sue in our courts and the validity of the claim of each party to the consolidated actions on the merits if necessary, and to assert such defenses thereto as were open to it in the local forum under either the local law or the Soviet law (Cf. *Guaranty Trust Co.* v. *United States, supra*). It was not bound or prejudiced by any action taken by any of the parties to the consolidated actions or by any decision made by the courts therein prior to intervention, since neither it nor its claim was before the court prior to that time. The United States government has never had an opportunity to litigate those claims. *Upon a contest by an interested litigant* it might be shown that none of the claims can be maintained in our courts. Such claimants might be found to be without such a standing as would permit them to contest the claim of the intervener. After the United States intervened the only issue tried or determined in the trial court was whether appellant had a right to intervene and contest the claims of respondents. Decision of that question against appellant was based on findings that the United States acquired no right or title whatsoever to the fund in question by the assignment because the Soviet government had no title to give, but that, even though it acquired thereby some interest, the public policy of the State of New York forbade its recognition.

Of course, the Soviet government neither could (*United States* v. *Buford*, 3 Pet. [U. S.] 12) nor presumed to transfer greater title or a more extensive interest in the fund than it had to give. What it acquired by the nationalization decrees or what limitations may be placed by the confisca-

tion decrees on claims of creditors of the nationalized company must be determined exclusively by the Soviet law. I have indicated that, in my opinion, the scope and effect of the decrees are not open for consideration as a question of fact in our courts. If otherwise, the result is not changed. What was the applicable Soviet law and the intent and scope of the decrees in question was decided by the referee as a question of fact based upon an examination of various documents introduced in evidence and upon the oral testimony of an expert whose opinion he saw fit to disregard. Where written laws or judicial opinions of foreign courts are involved, the question of construction, if open, is one of law for the court, but where the construction of unwritten laws is involved, what is the law becomes a question of fact (*Genet* v. *D. & H. Canal Co.*, 163 N. Y. 173; *Bank of China* v. *Morse*, 168 N. Y. 458; *Fitzpatrick* v. *International Ry. Co.*, 252 N. Y. 127). The referee erroneously decided that the purpose, intent and scope of the decrees did not affect or embrace the property here in question. I find no evidence whatever in the record to sustain his conclusion. If open to construction, the decrees are to be construed in the manner they are understood and applied by the Soviet government. There is no dispute in the record as to how they have been construed and applied by that government. The testimony of the government expert, the various relevant documents and the decisions of Soviet officials authorized to construe and to promulgate and enforce rules and regulations thereon establish without contradiction that the intent, scope, purpose and effect of the Soviet decrees was to embrace within their coverage the property of the Moscow Fire Insurance Company physically located within the United States. There was no evidence to the contrary. As matter of law we must so hold. We are not concerned with the validity of the assignment, for that is a political, not a judicial, question.

No one disputes the fact that our State courts have control over the surplus fund and power to order its distribution ( *United States* v. *Bank of New York & Trust Co.*,

296 U. S. 463). That control extends only to its preservation for its rightful owner and the power to distribute extends only to distribution to those rightfully entitled thereto according to law. We have no power to distribute it according to our notions of the equities which, however camouflaged, must of necessity be based on a lingering policy of non-approval and non-recognition of the nationalization and confiscation decrees of the Soviet government from which, even now, we hesitate to depart. On no other theory can distribution be ordered here to claimants other than our own nationals or to the intervener. Still, we have said that, however thoroughly convinced in the righteousness and justice of our public policy against nationalization and confiscation of private property we may be, our feelings in the matter must not dictate our judgment (*Dougherty* and *Manhattan* cases, *supra*), and the Supreme Court, in the *Belmont* case, has added the controlling weight of its authority by asserting that " no state policy can prevail against the international compact here involved " (p. 327).

The judgment appealed from and the judgment of the Special Term should be reversed and the matter remitted to the Special Term to proceed in accordance with this opinion, with costs to appellant against respondent claimants in all courts.

O'BRIEN, HUBBS and LOUGHRAN, JJ., concur with LEHMAN, J.; RIPPEY, J., dissents in opinion, in which CRANE, Ch. J., and FINCH, J., concur.

Judgments affirmed. (See 280 N. Y. 848.)