William C. IIecht, Jr., J.
This action was brought by a stockholder of defendant, a Cuban corporation, for the appointment of a permanent receiver of its assets in this State, pursuant to section 977-b of the Civil Practice Act. Defendant originally appeared by attorneys designated by an interventor appointed for the corporation under Cuban law. The instant motion is made by an attorney designated by the corporation’s president, to be substituted for the present attorneys. The court designated a Referee to hear and report as to (1) the legal effect of the various Cuban statutes, resolutions and administrative directions; and (2) whether the order of intervention is entitled to extra-territorial recognition in this jurisdiction in respect of rights of creditors to the New York assets (28 Misc 2d 434).
Live testimony was offered for both parties by experts in Cuban law, who were subject to extensive cross-examination. All of the relevant Cuban statutes, resolutions and administrative directions were received in evidence. The Referee concluded (1) that absent the order of intervention the president would be entitled to sole control over the conduct of this litigation on behalf of the defendant corporation, but (2) that the order of intervention undertakes to give the interventor sole control over the conduct of the litigation.
The Referee concluded, however, that such order should not be given extra-territorial recognition in the litigation pending in this court in respect to New York assets. Reviewing numerous cases discussing the “ Act of state ” doctrine, he pointed out that it has been applied only to persons who, and res which, are within the territorial dominion of the acting State; and to contracts whose “ center of gravity” is within the territorial dominion of the State. It has not been given extra-territorial effect upon persons or res without the territorial dominion of the acting State; nor upon contracts whose “ center of gravity ” is without the territorial dominion of the acting State.
The Referee concluded that the interventor’s attempt to control a litigation pending in this court and affecting local assets was a deprivation of the right of stockholders and directors to manage the corporate affairs in this country, which was just as contrary to our public policy and as shocking to our sense of *792 justice and equity as an outright dissolution of the corporation and confiscation of its assets would be (Vladikavkazsky Ry. Co. v. New York Trust Co., 263 N. Y. 369, 378; Moscow Fire Ins. Co. v. Bank of New York, 280 N. Y. 286, 314). He held further that the situation in the case at bar was analogous to that of the Bussian corporations whose directors were authorized to sue in our courts despite their dissolution by the Soviet government (Petrogradsky M. K. Bank v. National City Bank, 253 N. Y. 23, 30-32; Salimoff & Co. v. Standard Oil Co., 262 N. Y. 220, 225-226).
The interventor disputes the applicability of these authorities on the ground that the intervention is allegedly a temporary measure and therefore differs from a dissolution. However, in view of the indefinite duration of the intervention, and the lack of any proof as to when or whether it will ever be terminated, this argument is untenable.
In 1926, the Legislature enacted section 169-a of the Civil Practice Act (L. 1926, ch. 232) which provided for a stay of actions on certain insurance contracts payable in Bussian rubles “until the expiration of thirty days next following the recognition de jure of a government of Bussia by the Government of the Hnited States ”. This was held unconstitutional as impairing the obligation of contracts (Sliosberg v. New York Life Ins. Co., 244 N. Y. 482, 495-499). “ Property may be as effectively taken by long-continued and unreasonable delay in putting an end to confiscatory rates as by an express affirmance of them ’ ’ (Smith v. Illinois Bell Tel. Co., 270 U. S. 587, 591).
The interventor argues further that American stockholders, by purchasing stock in this Cuban corporation, subjected themselves to all Cuban legislation affecting the internal affairs of the corporation. This is true in respect of lawsuits and assets in Cuba. Thus, this court would have no jurisdiction to interfere with the disposition of the one million peso deposit of the corporation in a Cuban bank which was seized by the interventor even if the money were ultimately brought to this country (Salimoff & Co. v. Standard Oil Co., supra; Ricaud v. American Metal Co., 246 U. S. 304; cf. Banco Nacional de Cuba v. Sabbatino, 193 F. Supp. 375, now on appeal in the Second Circuit).
But is must be remembered that this corporation sought listing on the American Stock Exchange, soliciting subscriptions from American investors on the basis of that listing application, and left capital money on deposit in a New York bank. American stockholders had a right to expect our courts to apply our own public policy in respect to litigation affecting that deposit. See the comprehensive discussion of Judge Hiktcks in *793 Zwack v. Kraus Bros. & Co. (237 F. 2d 255, 258-259 [C.C.A. 2d]). See, also, decision of Judge Palmieri in Compania Ron Bacardi, S. A. v. Bank of Nova Scotia (193 F. Supp. 814) considering Cuban legislation similar to that in the case at bar.
As Judge Lehman said in Russian Reinsurance Co. v. Stoddard (240 N. Y. 149, 163-164):
“ The very nature of the problem shows that general definitions must hamper rather than promote its solution. The facts of each case, the result of each possible decision, determine whether that decision accords with common sense and justice. There can be no true precedent in the books, when the facts are unprecedented. It remains for us to determine whether the result of the present judgment is contrary to common sense and justice.
“ We give or deny the effect of law to decrees or acts of a foreign governmental establishment in accordance with our own public policy; we open or close our courts to foreign corporations according to our public policy, and in determining our public policy in these matters common sense and justice must be consideration of weight. ’ ’
The interventor also urges the rule of comity. “ This rule is always .subject, however, to one consideration. There may be no yielding, if to yield is inconsistent with our public policy ’ ’ (Russian Republic v. Cibrario, 235 N. Y. 255, 259). Here, not only the result of the Cuban legislation but the procedure involved is inconsistent with our public policy, since the intervention was effectuated without due notice to Trans-Cuba or an opportunity for it to be heard.
Finally, the interventor argues that if the motion for substitution be granted, the litigation will be nonadversary in character, because defendant’s president supports the relief sought by plaintiff. But that is his right, if the chosen representatives of the stockholders deem it to be in the corporate interest to seek the equitable distribution of its New York assets which is the underlying purpose of section 977-b of the Civil Practice Act. (Oliner v. American-Oriental Banking Corp., 252 App. Div. 212 [2d Dept.], affd. 277 N. Y. 588; Talmon v. Societatea Romana Pentru Industria, 206 Misc. 449 [Eager, J.].)
A corporation may not file a voluntary petition as is the case in bankruptcy. Therefore it can obtain the benefit of the statute only by consenting to such a petition when filed by a stockholder.
It should be added that this last argument of the interventor is not too persuasive in view of his own attempt to obtain control of this fund by directing an officer of the corporation to make demand therefor on the bank. His attorneys seek to brush this *794 fact aside as irrelevant. But it seems highly significant to the court. If the interventor had confidence in the validity of his title to the fund, he should have been willing to submit it to judicial determination.
In any event, if the interventor believes that any argument of fact or law should be brought to the court’s attention to defeat the granting of the relief sought, he is at liberty to move to intervene pursuant to subdivision 1 of section 193-b of the Civil Practice Act. The Referee’s report indicates that both parties evidenced a favorable attitude towards allowing such intervention by the party who did not prevail on this motion. But the defendant corporation as a party must be properly aligned so that the court may informedly exercise its powers under section 977-b of the Civil Practice Act (cf. Schwartz v. Compania Azucarera Vertientes-Camaguey de Cuba, 14 A D 2d 582 [2d Dept.]).
For the foregoing reasons, the Referee’s report is confirmed and the motion for substitution is granted, without prejudice to an application by the substituted attorneys for leave to intervene.