HONEY MANN, Respondent, *v.* COMPANIA PETROLERA TRANS-CUBA S. A., Respondent.

ARMANDO SOTO, Proposed Intervenor-Appellant; PETER L. F. SABBATINO, as Receiver, Respondent.

First Department, November 15, 1962.

194

*Leonard B. Boudin* of counsel (*Victor Rabinowitz* and *Henry Winestine* with him on the brief; *Rabinowitz & Boudin,* attorneys), for appellant.

*Hobart L. Brinsmade* of counsel (*Allen McGrath* with him on the brief; *Brinsmade & Schafrann,* attorneys), for Honey Mann, respondent.

*Arthur Goldstein* of counsel (*Joseph Slavin* with him on the brief), for Compania Petrolera Trans-Cuba S. A., respondent.

RABIN, J. P. This is an action brought pursuant to section 977-b of the Civil Practice Act by an American stockholder of an allegedly nationalized Cuban corporation.

In August, 1960, by ex parte order obtained in the Supreme Court, New York County, a temporary receiver was appointed for the defendant " Compania Petrolera Trans-Cuba, S. A."— a Cuban corporation which at the time had $1,800,000 on deposit in the Manufacturers Trust Company in New York. The plaintiff thereafter effected service of the summons and complaint upon the corporation by publication pursuant to an order in conformance with the requirements of section 977-b. The action was based upon the allegation that the corporation had been nationalized and dissolved by decree of the Cuban government.

An answer was thereafter interposed, purportedly in behalf of the corporation, by the law firm of Rabinowitz & Boudin at the instance of one Armando Soto, the " interventor " of the corporation, who had been appointed as such by the Cuban government.* The president of the corporation, an exile from Cuba, retained other counsel, i.e., Arthur Goldstein, Esq., who moved to have himself substituted in place of Rabinowitz & Boudin as attorneys for the corporation. This motion came on to be heard before HECHT, J., who directed a reference to examine into the pertinent Cuban laws and decrees in order to determine what effect the Cuban order of intervention would have on the

---

* It appears that under Cuban law an " interventor " holds a position in the nature of a receiver or administrator of the corporation. Soto was appointed " interventor " by a resolution of the Cuban Ministry of Misappropriated Property which empowered Soto " in substitution of the General Stockholders' Meeting, the Board of Directors and the Executive Committee of [the corporation involved] to exercise all the regular and special powers vested in the said Agencies * * * all of which powers he may exercise without any limitation or recourse."

question posed, i.e., who would have the right to designate counsel to represent the corporation in this proceeding. (28 Misc 2d 434.)

Extensive hearings were conducted by the Referee at which experts on Cuban law testified. At the conclusion of the hearings the Referee rendered his report in which he concluded that the president of the corporation rather than the "interventor" Soto was entitled to the sole control of the litigation in behalf of the corporation. A motion to confirm was made and Judge HECHT confirmed the Referee's report and granted the motion to substitute Arthur Goldstein in place of Rabinowitz & Boudin as attorneys for the corporation, "without prejudice to an application by the substituted attorneys for leave to intervene" in the action. (32 Misc 2d 790, 794.) No appeal was taken from this order.

Soto, thereafter, moved to intervene and the plaintiff cross-moved for summary judgment based upon the answer of the corporation (interposed by Goldstein) which in effect was a consent to the relief sought. LEVEY, J., denied the intervention application and granted summary judgment to the plaintiff.* Soto then moved to dismiss the complaint and all proceedings on the ground that the action was a collusive one. This motion was denied by HECHT, J. This appeal brings on for review the orders entered in consequence of the decisions referred to above.

In denying intervention it appears that LEVEY, J., construed the determination of Judge HECHT — holding that the Cuban orders and decrees making Soto the "interventor" were not entitled to recognition here — as being *res judicata* on the question of intervention. We do not so construe that determination.

An examination of the Referee's report negatives the conclusion that the Referee determined that Soto's appointment was of no effect here for any purpose whatever. In any event even had he so concluded he would have acted beyond the scope of the question submitted to him. The issue presented was limited to the question of who had the right to control the defense in behalf of the corporation — the "interventor" or the corporate president. The "conclusions" in his report manifest the limited purpose of the hearings. He there stated that the

---

* Subsequently an application was made to resettle the order of LEVEY, J., denying intervention and granting summary judgment so as to correct the failure to recite in the order the minutes of the hearing before the Referee as well as certain exhibits. This motion was denied. An appeal from the order entered on such denial is being considered together with the above-mentioned appeals.

president " is entitled to sole control of this litigation on behalf of the defendant corporation." Moreover, the Referee expressly stated that the question of Soto's right to intervene was " outside the scope of this reference." In fact he observed that Special Term might well permit intervention upon a proper application.

Nor did the decision of HECHT, J., made on the motion to confirm the Referee's report constitute an adjudication that Soto had no right to intervene. To the contrary, the court expressly stated (p. 794) that Soto was " at liberty to move to intervene " and it made its determination on the substitution motion " without prejudice to an application by the substituted attorneys for leave to intervene."

We conclude therefore that the consideration of the question as to Soto's right to intervene is not foreclosed to us by reason of the failure to appeal from the order of HECHT, J., granting substitution, and we accordingly examine the question of intervention *de novo*.

The right to intervene is found in section 193-b of the Civil Practice Act. Paragraphs (b) and (d) of subdivision 1 of that section provide that intervention *shall* be permitted:

" (b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or

\* \* \*

" (d) where the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of, or subject to the control of or disposition by, the court or an officer thereof."

At the outset it should be noted that this section is to be liberally construed. The present form of the statute was modelled after rule 24 of the Federal Rules of Civil Procedure in an attempt to further broaden its scope and liberalize its application (see Twelfth Annual Report of N. Y. Judicial Council, 1946, pp. 218–232).

It must be observed that the issue presented is a very narrow one. We are not now concerned with the merits of the 977-b action or what its eventual outcome may be. We are concerned only with whether Soto has demonstrated the existence of facts sufficient to bring him within section 193-b so as to require that he be permitted to intervene—in effect to be heard in the litigation.

The Referee and Judge HECHT, in granting substitution, concluded that as applied to the specific relief then sought, the decrees of foreign States will not be given extraterritorial

effect where persons or a *res* without the jurisdiction of the acting State are affected and where such decrees are of a confiscatory or similar nature as to outrage our public policy. They then concluded that the right to control litigation involving the corporation was in a sense a *res* without the jurisdiction, i.e., a corporate asset which could not be taken away extraterritorially under the circumstances of this case. We need not, nor do we, pass upon the propriety of the aforesaid conclusions. No appeal having been taken from the order of substitution that question is closed to us. We must now determine only whether Soto has a sufficient interest in this litigation to entitle him to intervene. Allowing him to intervene would not give force to any powers of a confiscatory nature conferred upon him by the Cuban decree, if indeed they are found to be confiscatory.

The moneys on deposit in the New York bank are in the name of the corporation and title to such moneys — despite the appointment of a temporary receiver — is, even at this date (except for the summary judgment under review), in the corporation. (See *Propper* v. *Clark,* 337 U. S. 472.) There is no doubt that under Cuban law Soto is in control of the corporation * — at least with respect to the assets located in Cuba. To deny intervention at this point would be to determine the disposition of corporate assets — albeit outside of Cuba — without affording to the corporate officers recognized in the State which gave life to the corporation, an opportunity to be heard.

The success of the plaintiff in obtaining relief under section 977-b depends substantially on her ability to demonstrate that the corporation has been nationalized or has ceased to do business. True, summary judgment was granted the plaintiff on that issue but the propriety of so doing is still under review. What the result would have been had that issue been contested we do not nor need we now foretell. Assuming that issue were to be contested and it be found that the corporation was not nationalized or had not ceased doing business so as to bring it within section 977-b, what would then follow? The moneys — at least title thereto — will remain in the corporation. Surely

---

* Upon the argument of the appeals the attorney for the receiver handed up a photostatic copy of what purports to be a translation of an official document from the Cuban Ministry of Industries. This document states that the appointment of Soto as " Interventor " was revoked and an " Administrator " — Mariano Morina — appointed. The document is dated July 3, 1962.

It would appear that this document ought not to have any effect on the matter before us and we give it no consideration. It was not part of the record below nor was any proof offered as to its authenticity. Nor has the " Administrator " named in the document seen fit to attempt to inject himself into this action.

at this point the "interventor" would have an assertable interest in the funds. That would bring him squarely within paragraph (d) of subdivision 1 of section 193-b as a person "adversely affected by a distribution or other disposition of property in the custody of, or subject to the control of or disposition by, the court or an officer thereof." And certainly the situation is such as is contemplated by paragraph (b) of subdivision 1 of the same section in that the representation of his interest is "inadequate". We need not determine that the funds could thereupon be removed to Cuba* to find an interest in the "interventor" sufficient to warrant intervention. The granting of the intervention motion gives Soto nothing nor does he get anything but the opportunity to defend the action. We do not determine what happens in the event he be successful should he be permitted to defend. It might well be that at that point the "interventor" could resume his efforts to have the moneys transferred to Cuba and perhaps even be successful. It suffices for the purpose with which we are here concerned to conclude that an unsuccessful termination of this action will create a situation where the "interventor" will at least have an "interest" in the funds on deposit in the corporate name.

It is significant to note that service upon the corporation was required to be made by publication and by mailing the summons, complaint and other papers to the corporation's office in Cuba. What purpose did that serve if not to alert those who, under Cuban law were operating lawfully in Cuba on behalf of the corporation, to the possibility that the funds here might be administered pursuant to section 977-b. May it be logically argued that the "Cuban" corporation officials had a sufficient interest in the litigation to be served with process but an insufficient interest when they sought to respond to such process and be heard on the merits of the action?

It is no argument to say that it is clear that the plaintiff is bound to succeed in this action and that, therefore, the "interventor" will never have any further right or interest to the funds in question. Given a right to defend, the "interventor" might convince the court that the law is not as clear as what the parties in the action now assert it to be. To dispose of the funds without affording the "interventor" an oppor-

---

* It should be noted however that but for the institution of this action under section 977-b of the Civil Practice Act the funds would in all likelihood have been transferred to a Cuban bank by the New York depository by a check drawn by the corporate officials in Cuba. The New York bank had indicated that unless an order blocking such transfer were obtained they would be compelled to honor the check and transmit the funds.

tunity to be heard could constitute an act of confiscation as grievous as those of which the plaintiff complains with respect to the appointment of the "interventor" in Cuba. All that the "interventor" seeks is the right to be heard before assets of the corporation he "represents" are distributed to others. This right may not be denied him. No matter how clear it may be that a cause of action in a complaint is a meritorious one and that the plaintiff is destined to succeed, the right of a party to answer such a complaint may not be abrogated (cf. *City of New York* v. *Nadel*, 11 A D 2d 652). Soto has made claim to the funds on deposit. Due process demands that the opportunity to be heard be afforded him before such claim is rejected. Particularly is such a rule applicable where, as here, the party permitted to defend has consented to the summary judgment which granted the extraordinary relief sought by plaintiff.*

Accordingly, the order denying intervention and granting summary judgment should be reversed on the law and the facts, with costs, intervention granted and summary judgment denied.

The appeal from the order denying the interventor's motion to dismiss the complaint on the ground that the action is collusive and the appeal from the order denying resettlement will now be rendered academic and the appeals should be dismissed, without costs.

STEVENS, J. (dissenting). I agree with the majority that the question of Soto's right to intervene is not foreclosed to us. However, I dissent from the conclusion reached by the majority for the reasons hereinafter stated.

Compania Petrolera Trans-Cuba (herein Trans-Cuba) is, or was, a Cuban corporation. This action, under section 977-b of the Civil Practice Act, for the appointment of a permanent receiver of its assets, is taken by the corporation with the approval of its three voting trustees of its stock, and of a majority of the corporate board of directors. Approximately $1,800,000 is involved, of which $1,500,000 was raised by the sale of stock to stockholders in this country. The balance represents a payment to Trans-Cuba under a contract Trans-Cuba had with Stanolind Oil and Gas Company.

Soto is not an officer, stockholder or director of Trans-Cuba, but bases his claim of right to intervene solely upon his appointment as intervenor of Trans-Cuba by the Cuban revolutionary

---

* The courts have permitted intervention by stockholders in actions against their corporation where directors abuse their discretion in refusing to defend or fail to prosecute the defense in good faith. (See 13 Fletcher, Cyclopedia Corporations, § 5853, p. 246 and cases cited.)

government. The act creating such appointment empowered Soto to act "in substitution of the General Stockholders' Meeting, the Board of Directors and the Executive Committee" of Trans-Cuba and purported to extend his control of corporate assets not only to those within Cuba, but to corporate property in foreign lands as well. The promulgating of the act or decree was without notice to or hearing given Trans-Cuba.

Soto must and does rely upon the "act of state" doctrine and, if that be rejected, he relies upon comity.

The power of this court to entertain the action and the validity of Soto's appointment as to corporate assets in Cuba are not here questioned (cf. *Holzer* v. *Deutsche Reichsbahn-Gesellschaft*, 277 N. Y. 474). In fact, for over one year Soto, as interventor has had possession of one million pesos (a sum the present government of Cuba claims was loaned to Trans-Cuba by a former government). In that time no department of the Cuban government has filed a claim as a creditor, and there are no known creditors other than possibly the Cuban government. The record indicates the money there and the money in this country will not be distributed to stockholders, and indicates as well that it cannot be determined when, if ever, the corporate property would be returned to Trans-Cuba. Trans-Cuba has ceased to do business in Cuba and now seeks to liquidate its assets here and go out of business.

In determining whether Soto has a right to intervene pursuant to section 193-b of the Civil Practice Act, we must look to the nature of the act appointing Soto interventor. We must ascertain as well if Soto has any interest which can or may be adequately protected only by granting leave to intervene, or if Soto would be so adversely affected by a distribution of the assets that leave must be granted.

Soto, as interventor, sought to take from the stockholders' representatives in this country their power to manage the corporate affairs or control its assets here. In fact he sought to obtain or confiscate the funds in the bank here directly, without resort to any judicial process, claiming the right to do so by reason of the power conferred by the Cuban decree. At the hearing all material issues involved in this proceeding were thoroughly explored. If a trial were directed it would be largely a repetition of testimony previously given, and no practical purpose would be served thereby. All of the issues may be properly disposed of on this appeal from the record before us.

The moneys in the bank here are clearly corporate funds and, as such, subject to such disposition as may be properly authorized

by the corporation or by the court in a proceeding brought by a stockholder pursuant to section 977-b of the Civil Practice Act (*Oliner* v. *American-Oriental Banking Corp.*, 252 App. Div. 212, affd. 277 N. Y. 588). This is so unless the "act of state" doctrine or comity would compel or require a contrary result.

The "act of state" doctrine refers to "[a]n act done by the sovereign power of a country, or by its delegate, within the limits of the power vested in him" (Black's Law Dictionary [4th ed.]). Since the principle involved here is not "one of the law merchant common to civilized countries" and Cuba inherited the law of Spain, there is no presumption that Cuban law is the same as the law of the forum (9 Wigmore, Evidence, § 2536, p. 493). Expert testimony was taken in open hearing on Cuban law and the effect of the decrees, and the Referee recommended against giving extraterritorial recognition to the order of intervention. The Referee's report was confirmed and we think properly so. The decrees of a foreign government cannot effectively bind the governments or courts of another sovereignty as to property located within the territorial confines of such other State unless such other State wills to be bound by it. And where the taking was without notice or an opportunity to be heard, such a taking offends our sense of justice, is contrary to our public policy and will not be given effect as to property within this State (cf. *Vladikavkazsky Ry. Co.* v. *New York Trust Co.*, 263 N. Y. 369), for "[l]aws of foreign governments have extraterritorial jurisdiction only by comity" (*ibid.*, p. 378); cf. *Petrogradsky M. K. Bank* v. *National City Bank* (253 N. Y. 23); *Gonzalez* v. *Industrial Bank* (*of Cuba*) (12 N Y 2d 33); *Moscow Fire Ins. Co.* v. *Bank of N. Y.* (280 N. Y. 286); *Banco Nacional De Cuba* v. *Sabbatino* (193 F. Supp. 375, affd. 307 F. 2d 845).

Soto stands in the position of Cuba and is its representative in this proceeding, his authority resting upon and being derived from the Cuban decree and documents appointing him interventor. To deny extraterritorial effect to such decree as to corporate property located here, but to hold that Soto has status by reason of such decree, sufficient to require that intervention be permitted pursuant to section 193-b of the Civil Practice Act, is, to say the least, a contradiction. It gives dignity and even validity to the Cuban decree. We have recognized the right of Trans-Cuba to retain its own counsel here, which in itself is a limitation on the extraterritorial effect of the Cuban decree as to a corporate right.

Section 193-b of the Civil Practice Act provides that a person desiring to intervene in an action shall serve with his notice of motion '' a proposed pleading setting forth the claim or defense for which intervention is sought ''. The obvious purpose of such provision is to permit the court to see if the proposed pleading sets up a good claim or defense. If the intervenor does not raise any new issues or presents issues which have already been decided adversely to him, then intervention will only serve to delay an adjudication and to prejudice the rights of the original parties to the action. To sustain a right to be heard there must be a showing that the proposed intervenor has something of substance to say. The proposed pleading of Soto, and the affidavits on the motion to intervene conclusively establish that intervention by Soto can present no new issue or any defense which has not already been determined in the action. Hence, intervention could only serve to delay the ultimate granting of summary judgment in this action under section 977-b of the Civil Practice Act. Since intervention can serve no practical purpose, it should not be granted solely upon theoretical considerations of some interest in the outcome of the litigation.

Soto may present any claim he has pursuant to section 977-b, either as a creditor or person interested, and the claim, if it has validity, will be recognized and adequately protected. Nor will Soto be adversely affected by a denial of the right to intervene since he has no status independent of that conferred by the decree, and he cannot complain if in the stockholders' action Trans-Cuba does that which it properly has a right to do.

Summary judgment was properly granted (*Oliner* v. *American-Oriental Banking Corp.*, 252 App. Div. 212, affd. 277 N. Y. 588, *supra*), and the orders appealed from should be affirmed in all respects.

McNally and Eager, JJ., concur with Rabin, J. P.; Stevens, J., dissents in opinion, in which Valente, J., concurs.

Order denying intervention and granting summary judgment reversed on the law and the facts, with costs to appellant, intervention granted and summary judgment denied. The appeal from the order denying the interventor's motion to dismiss the complaint on the ground that the action is collusive and the appeal from the order denying resettlement will now be rendered academic and the appeals are dismissed, without costs. Settle order on notice.